SEWARD COUNTY BOARD OF COMMISSIONERS ET AL., APPELLANTS, v. CITY OF SEWARD, NEBRASKA, A MUNICIPAL CORPORATION ET AL., APPELLEES.
242 N. W. 2d 849

Filed June 2, 1976. No. 40292.

Curtis Evans, and Bryce Bartu of Blevens, Bartu, Blevens & Jacobs, for appellants.

Thomas E. Johnson of Baird, Holm, McEachen, Pedersen, Hamann & Haggart, for appellees.

Heard before WHITE, C. J., SPENCER, BOSLAUGH, McCOWN, NEWTON, and BRODKEY, JJ.

BRODKEY, J.

This is a consolidated appeal from a decree entered by the District Court for Seward County, Nebraska, on July 2, 1975, dismissing the petitions in three separate actions previously consolidated for trial. We affirm.

The historical background of this litigation is as follows. The City of Seward has, for many years, endeavored to establish a municipal airport. Prior efforts have apparently been unsuccessful. See Bruns v. City of Seward, 186 Neb. 658, 185 N. W. 2d 853 (1971). The City of Seward, however, has persevered in its efforts to obtain an airport. In furtherance of that purpose, on September 27, 1974, it instituted eminent domain proceedings in the county court of Seward County, Nebraska, in an action entitled City of Seward, Nebraska, for and on behalf of the Seward Airport Authority, condemners,

v. Edward W. Brinkmeyer, Jr., and Lucille Brinkmeyer, husband and wife; Norman Luebbe and Naomi Luebbe, husband and wife, et al., condemnees. The condemnees were all owners of real estate, or interests therein, comprising the site of the proposed airport. Under the statutes of this state, municipalities, including cities, and airport authorities created by such cities, are authorized to acquire property for the purpose of establishing, constructing, and enlarging airports; and, for that purpose are granted powers of condemnation. See, §§ 3-201 to 3-204, 3-503, and 3-504, R. R. S. 1943. See, also, § 3-504, R. S. Supp., 1975.

In the condemnation proceeding the appraisers appointed by the county court took their oath of office; inspected the respective properties involved; heard the interested parties on the question of valuation and damages; and, on May 12, 1975, filed their returns as to the value of the property of each of the condemnees, including the Brinkmeyers and the Luebbes, who on May 14, 1975, filed notice of appeal to the District Court for Seward County.

The record discloses, however, that in October 1974, shortly after the commencement of the condemnation proceedings in county court on September 27, 1974, but prior to the award of the appraisers, the Seward County Board of Commissioners, under the authority contained in section 23-114.05, R. R. S. 1943, filed an action in equity in the District Court for Seward County for the purpose of compelling enforcement of its county zoning regulations. It claimed these zoning regulations would be violated by the use of the property in question for airport purposes, and prayed that the City of Seward and the Seward Airport Authority be restrained and enjoined from proceeding in any manner with regard to the proposed airport project. At the same time, the Brinkmeyers and the Luebbes filed separate actions in the District Court praying for the same relief. These are the three actions to which we previously referred

as being consolidated for trial on Jaunary 6, 1975. The temporary restraining orders, entered on October 31, 1974, against the defendants-appellees, were dissolved on April 7, 1975. The defendants-appellees thereafter filed their respective answers, and the consolidated cases were tried on the merits on April 21, 1975. The court entered its decree on July 2, 1975, finding in favor of the defendants and dismissing all the petitions. The Seward County Board of Commissioners, the Brinkmeyers, and the Luebbes then perfected their consolidated appeal to this court.

It is conceded that the tract of land involved in this action lies outside the zoning jurisdiction of the City of Seward. On September 4, 1973, the Seward County Board of Commissioners, upon recommendation of the Seward County planning commission, adopted by resolution county zoning regulations, which incorporated a comprehensive development plan and a zoning map for Seward County. Prior to the adoption of the county zoning regulations, Norman Luebbe appeared before the Seward County planning commission, and requested and received commercial and residential zoning use designations for the Luebbe property. The Brinkmeyers also requested and received residential zoning use designation for 20 acres of their property. At the time of the commencement of the eminent domain proceedings in the county court, an airport was a permitted conditional use in an agricultural area, but was not a permitted conditional use in a residential area. During the pendency of the proceedings, the county zoning ordinance was amended on April 15, 1975, by repealing the section that permitted airports as a conditional use in an agricultural area, and substituting the provision that an airport was a principal use permitted in the C-1 commercial district. No request was made by the defendants-appellees for a modification of the provisions of the ordinance. There is no question that under the terms of the county zoning ordinance, as it presently

exists, the construction of the airport on the land in question would not be permitted.

Appellants in their brief list seven assignments of error which they claim require reversal of the District Court's judgment. Only three of these require discussion. They contend that the court erred: (1) In finding that the City of Seward and the Seward Airport Authority were not subject to the Seward County zoning regulations; (2) in finding that zoning was not a condition precedent to the exercise of eminent domain; and (3) in finding that the City of Seward and the Seward Airport Authority had complied with sections 25-2501 to 25-2506, R. S. Supp., 1974. Appellants concede in their brief and oral argument that the basic question to be determined is whether the City of Seward and the Seward Airport Authority in exercising their statutory powers to establish an airport in an area outside the city's corporate limits are subject to the zoning regulations of the county. While we shall discuss that issue in this opinion, we first wish to comment on appellants' claim that the finding of the District Court that zoning is not a condition precedent to the exercise of the power of eminent domain was erroneous. Appellants contend that the Seward Airport Authority may not take any land except that which has been zoned to permit an airport, and it has to be so zoned before it may be taken.

The general rule is that the propriety of a taking of property by eminent domain is not defeated by the fact that the purpose for which the property is taken is a use prohibited by the zoning regulations. 101 C. J. S., Zoning, § 137, p. 896. In West v. Housing Authority of City of Atlanta, 211 Ga. 133, 84 S. E. 2d 30 (1954), the court held that despite a statutory provision that the Atlanta Housing Authority was amenable to zoning ordinances, the authority's compliance with ordinances and regulations was not a condition precedent to its condemning private property. In Sellors v. Town of Concord, 329 Mass. 259, 107 N. E. 2d 784 (1952), the

court was faced with a similar problem, and in its opinion stated: "That a possibility exists that the land may not be devoted to the proposed uses cannot be denied. But in the absence of evidence that the town cannot reasonably expect to achieve its public purposes, we cannot deny its right to take land by eminent domain. Obviously in the carrying out of the projects contemplated by the town many steps must be taken, and they cannot all be taken at once. The town would hardly be in a position to ask the board of appeals for permission to use the land for municipal purposes before it had acquired the land. It would have to appropriate funds for the construction of the proposed buildings. And, conceivably, it might have to borrow money and issue bonds for this purpose. Very likely the services of an architect would be required and authority to employ him would be necessary. Perhaps building permits would also be required. It is possible, therefore, that the proposed buildings might never be built because of the failure of the town to obtain or grant authority with respect to one or more of these matters. But it would be unreasonable to hold that the town could not exercise the power of eminent domain until all steps necessary to the carrying out of the projects had been taken. See State v. Centralia-Chehalis Electric Railway & Power Co., 42 Wash. 632, 638." See, also, Tift v. Atlantic Coast Line R.R. Co., 161 Ga. 432, 131 S. E. 46 (1925). Therefore, even if the City of Seward and the Seward Airport Authority were subject to and bound by the zoning requirements of Seward County, which prohibit the establishment of the airport in question on the land sought to be acquired, the lack of proper zoning for the airport would not justify interference by Seward County in the efforts of the City and its Airport Authority to acquire the land in question.

We now address ourselves to the problem of whether the City of Seward and the Seward Airport Authority are subject to the zoning regulations of Seward County. We first consider appellants' contention that section 18-1716,

R. R. S. 1943, governs the situation. That section was added to the Nebraska statutes in 1967 by L.B. 521, Laws 1967, c. 75, § 6, p. 245, and provides as follows: "Any regulation of any municipality pertaining to any area outside of its corporate limits shall be subject to any lawful and existing regulation of another municipality pertaining to that same area; Provided, that any area annexed by any municipality shall be subject to the ordinances of such municipality after such annexation." Appellants contend that since their zoning regulation was "first-in-time," it is controlling. We do not agree that the above section is applicable. We note that under the municipal planning statutes of this state, it is specifically provided that: "Municipality or municipal includes or relates to cities of the first and second class and villages." § 18-1301, R. R. S. 1943. This section does not mention counties, which have their own statutory zoning authority from the Legislature. More importantly, however, a study of the legislative history of L.B. 521 indicates it was intended to apply to and clarify the existing situation where two cities have overlapping zoning control and also control across county lines. There is nothing to indicate that it was intended to be applicable to situations similar to that in this case where a county is attempting to enforce its zoning regulations upon a city within its own borders. Airports are not mentioned and the section is clearly an attempt to eliminate the possibility of overlapping in municipal extraterritorial zoning and subdivision jurisdiction which existed in some areas of Nebraska at the time L.B. 521 was enacted. In this case the Seward Airport Authority is not attempting to exercise zoning jurisdiction but is attempting to exercise its statutory powers of eminent domain. We hold that section 18-1716, R. R. S. 1943, is not applicable to this litigation.

We have held that a county in this state is not a municipal corporation but is a quasi-corporation, governmental in character, charged with objects of necessary

local administration and in that capacity acts as an agent of the state. State ex rel. Johnson v. County of Gage, 154 Neb. 822, 49 N. W. 2d 672 (1951); Frickel v. Lancaster County, 115 Neb. 506, 213 N. W. 826 (1927). It does not possess the double governmental and private character that cities do. State ex rel. City of Omaha v. Board of County Commissioners of Douglas County, 109 Neb. 35, 189 N. W. 639 (1922). As an agent of the state, the county, of course, is subject to the plenary powers of the state. The state, in furtherance of its overriding interest in the promotion of aviation, has given considerable power to the Department of Aeronautics and the Aeronautics Commission, which is given the specific duty of designating the locations and sites of airports. § 3-104(2), R. R. S. 1943. All proposed airports must be licensed by the Department of Aeronautics to insure compliance with safety standards. § 3-133, R. R. S. 1943. The Department of Aeronautics approves airport sites only if they conform to safety standards set by the department. § 3-128(3), R. R. S. 1943. Among the stated purposes of the Department of Aeronautics is the promotion of aeronautical safety, cooperation in effecting uniformity of laws in the states, the promotion of a statewide system of airports, and the establishment of uniform regulations. § 3-102, R. R. S. 1943. Section 3-107, R. R. S. 1943, specifically provides: "The department shall have general supervision over aeronautics within this state. It is empowered and directed to encourage, foster and assist in the development of aeronautics in this state and encourage the establishment of airports and other air navigation facilities; * * *." In addition, the Aeronautics Commission also supervises and directs the allocation of state and federal funds to be spent for the construction or maintenance of airports. § 3-104(1), R. R. S. 1943. We do not pass upon the question of whether the powers granted to the Department of Aeronautics are sufficient to clearly indicate an intention on the part of the state to preempt the field,

although a strong argument could be made to that effect, but merely point them out to demonstrate the strong interest of the state in promoting aviation within the state. Seward County should not be able to thwart this state objective through the medium of its zoning authority which was derived from the state itself.

It has frequently been stated that the power of eminent domain is inherently superior to the exercise of the zoning power, and that the grant of eminent domain power to a governmental unit renders the unit immune from zoning regulation. See 84 Harv. L. Rev., 869, 874.

In State of Missouri ex rel. Askew v. Kopp, 330 S. W. 2d 882 (Mo., 1960), the court stated the rule to be that the grant of the power of eminent domain to a public body desiring to utilize land for a purpose prohibited by a local zoning ordinance renders the zoning ordinance inapplicable. As examples the court stated: "Thus it has been held that a city could erect a fire station in an area of the city zoned for residences, apartments and churches, Mayor of Savannah v. Collins, 1954, 211 Ga. 191, 84 S. E. 2d 454; a housing authority could condemn for a multiple-residence housing project in an area zoned for single-family residential use (notwithstanding the statute expressly made the housing authority amenable to local zoning laws), West v. Housing Authority of Atlanta, 1954, 211 Ga. 133, 84 S. E. 2d 30; a county could build an airport in an area of a village in spite of a village zoning ordinance prohibiting the use of the property for an airport, State ex rel. Helsel v. Board of County Commissioners, 1948, 149 Ohio St. 583, 79 N. E. 2d 911; a turnpike commission could establish a turnpike through territory zoned against turnpike use, State ex rel. Ohio Turnpike Commission v. Allen, 1952, 158 Ohio St. 168, 107 N. E. 2d 345, certiorari denied Balduff v. Turnpike Commission, 344 U. S. 865, 73 S. Ct. 107, 97 L. Ed. 671; and cities could establish airports without regard to township zoning regulations prohibiting the same. Aviation Services v. Board of Adjustment, 1956,

20 N. J. 275, 119 A. 2d 761; In re Petition of City of Detroit, 1944, 308 Mich. 480, 14 N. W. 2d 140." We agree with the rule enunciated above.

Of particular interest is Aviation Services, Inc. v. Board of Adjustment of the Township of Hanover, 20 N. J. 275, 119 A. 2d 761 (1956), where the Supreme Court of New Jersey held that even though the municipality's airport was located within the boundaries of a nearby township, the township zoning ordinance was inapplicable to such airport.

Also, in In re Petition of City of Detroit (airport site), 308 Mich. 480, 14 N. W. 2d 140 (1944), the Supreme Court of Michigan found a township zoning regulation unenforceable against a city planning an airport because of a statute giving the city the power to construct, acquire, or operate landing fields either within or without the city limits. See, also, State ex rel. Helsel v. Board of County Commissioners of Cuyahoga County, 79 N. E. 2d 698 (Ohio Com. Pl., 1947).

It is true that there are jurisdictions where the applicability of zoning regulations has turned upon the distinction between the governmental or proprietary character of the function involved. Appellants argue that a municipality operating a municipal airport is engaged in a proprietary function as distinguished from a governmental function. They cite as authority Braisier v. Cribbett, 166 Neb. 145, 88 N. W. 2d 235 (1958), and Obitz v. Airport Authority of the City of Red Cloud, 181 Neb. 410, 149 N. W. 2d 105 (1967). Neither of the above cases involved the application of zoning ordinances. Brasier involved the imposition of tort liability and Obitz involved the question of the right to tax. The distinction between governmental and proprietary functions has in the past been useful in restraining the ancient concept of municipal tort immunity, not because of any logic in the distinction, but rather because sound policy dictated that governmental immunity should not envelop the many activities which the government pursues to meet

the needs of the citizens. State of Missiouri ex rel. Askew v. Kopp, *supra*. We agree with a number of commentators that although the distinction may be useful as a device for limiting the effect of governmental immunity from tort liability, it is not appropriate for the resolution of zoning conflicts. Annotation, 59 A. L. R. 3d, 1244, 1255. We decline to apply the "governmental proprietary" test to this case.

Finally, we note there are a few jurisdictions which employ a "balancing-of-public-interests" test to determine the applicability of zoning regulations in similar situations. Orange County v. City of Apopka, 299 So. 2d 652 (Fla. App., 1974); Town of Oronoco v. City of Rochester, 293 Minn. 468, 197 N. W. 2d 426 (1972). We believe that while such a rule may have its merits and advantages, it also has its disadvantages because of lack of guidelines for its operation and increased difficulties of application.

In City of Heath v. Licking County Regional Airport Authority, 237 N. E. 2d 173 (Ohio Com. Pl., 1967), the court quoted from the opinion of Chief Justice Cardozo of the Court of Appeals of New York in the case of Hesse v. Rath, 249 N. Y. 436, 164 N. E. 2d 342, as follows: "Aviation is to-day an established method of transportation. The future, even the near future, will make it still more general. The city that is without the foresight to build the ports for the new traffic may soon be left behind in the race of competition. Chalcedon was called the city of the blind, because its founders rejected the nobler site of Byzantium lying at their feet. The need for vision of the future in the governance of cities has not lessened with the years. The dweller within the gates, even more than the stranger from afar, will pay the price of blindness."

Finally, we have also examined appellants' contention that the trial court erred in finding that the City of Seward and the Seward Airport Authority had complied with sections 25-2501 to 25-2506, R. S. Supp., 1974, which

is the uniform procedure for acquiring private property for public use act. We find that contention to be without merit. That act does not require that the necessity for the project be established by evidence at the public hearing. Legislative history of the act makes it clear that the hearing provided for is in the nature of a "town meeting" hearing at which time interested parties are permitted to attend; and the reasons for the taking, and their rights as to their property, are explained to them, particularly with reference to their right to negotiate for a sales price; or, failing in that area, the right of the agency to institute eminent domain proceedings in court. It was anticipated that the procedure provided would result in a decrease in the amount of litigation. The record reveals that the hearing had in the instant case was adequate to comply with the requirements of the statute.

In its decree, the trial court found that the City of Seward and the Seward Airport Authority were not subject to the Seward County zoning regulations and that, in any event, the zoning to allow the contemplated use was not a condition precedent to the exercise of eminent domain; and the court further found that the defendants had complied with the requirements of section 25-2504, R. S. Supp., 1974. We agree completely with the conclusions of the trial court, and therefore affirm its judgment.

AFFIRMED.