IN RE APPLICATION, NEBRASKA PUBLIC POWER DISTRICT, A PUBLIC CORPORATION AND POLITICAL SUBDIVISION OF THE STATE OF NEBRASKA, APPELLANT, V. LLOYD HUEBNER AND LORENE HUEBNER, APPELLEES.

276 N. W. 2d 228

Filed March 13, 1979. No. 42046.

Barlow, Johnson, DeMars & Flodman, for appellant.

John A. Gale of Girard & Gale, for appellees.

Heard before KRIVOSHA, C. J., WHITE, CLINTON, McCOWN, JJ., and J. KELLY, District Judge.

KRIVOSHA, C. J.

This is an appeal from an order of the Nebraska Public Service Commission (Commission) denying an application of the Nebraska Public Power District (District).

On August 1, 1977, the District, pursuant to section 75-710, R. R. S. 1943, filed application No. 32365 with the Commission seeking permission to construct 22 miles of a double circuit 230 kV, 3 phase electric transmission line to be located in Lincoln County, Nebraska, all as more particularly described in a map attached to the application.

On that same day the Commission, pursuant to section 75-714, R. R. S. 1943, transmitted to the Department of Aeronautics certain portions of the ap-

plication and requested comment from the Department of Aeronautics. On August 5, 1977, the Department of Aeronautics wrote to the Commission advising that "the subject application will not adversely affect any existing public airport, and this Department (Department of Aeronautics) has no objections to the construction, operations, or maintenance as set forth in Exhibits "A" and "B" as submitted to this office."

On September 22, 1977, the Commission entered its order granting the application of the District and allowing the construction of the line. No appeal was taken from that order and the order became final.

On December 13, 1977, almost 3 months after the Commission entered its order granting authority to the District to construct the line, the Commission wrote to Lloyd Huebner informing him that when application No. 32365 filed by the District on August 1, 1977, was transmitted to the Department of Aeronautics, the Department of Aeronautics failed to notify the Commission of the "Huebner Airport," and therefore Huebner was not contacted regarding the effect, if any, the proposed line would have on the safe operation of his "airport."

The record indicates that Huebner, although he did not receive formal notice of a hearing, was in fact aware at all times of the District's plans to construct the line. He was first contacted by the District on February 14, 1977, and wrote to the District concerning the line on February 28, 1977. He attended a meeting called by the District and held on March 8, 1977, when the construction of the line was discussed. The evidence is clear that Huebner had actual notice of the construction of the line and its location.

The Commission, on its own motion, stayed in part that portion of its order of September 22, 1977, affecting construction of the line on certain portions of the property owned by Huebner and ordered a hearing

on the application for January 6, 1978, at 9 a.m.

On January 6, 1978, the hearing was held by the Commission, and on February 6, 1978, (almost 5 months after entering its initial order granting authority) the Commission denied the application of the District in its entirety and directed the line not be constructed.

In its order of February 6, 1978, the Commission found that Lloyd Huebner was an interested party by reason of having a "licensed restricted landing strip affected by such application" as described in section 75-715, R. R. S. 1943. Further, the Commission determined that the fact that the District had already acquired a right-of-way on Huebner's property by condemnation and made payment of money to Huebner did not affect Huebner's right to object to the application as an owner of a licensed restricted landing strip.

If in fact the facility owned by Huebner was not of such type that was under the jurisdiction of the Department of Aeronautics and could be licensed, then Huebner was not an interested party requiring notice under the provisions of section 75-715, R. R. S. 1943, and the order of September 22, 1977, was in all respects lawful and binding. We hold that such facility is not within the meaning of section 75-715, R. R. S. 1943, and the Commission was in error in holding to the contrary.

The evidence discloses that at the time Huebner first learned about the District's desire to construct the line he did not then have a landing facility of any type on his property. The Department of Aeronautics issued order No. 77-7-18-1 on July 18, 1977, granting to Huebner the right to use the area on his land as a "restricted landing area *personal use.*" (Emphasis supplied.) While the Department of Aeronautics issued a registration certificate for the area and called it "Huebner Airport," it is clear

from a reading of the statute that such authority did not exist in the Department of Aeronautics and no license was authorized or required.

The facility to be used by Huebner for landing purposes was a cleared area in a meadow. While not determinative of the issues in this case, the evidence further discloses that Huebner owned no airplane and that the area being designated as "restricted landing area for personal use only" would not be shown upon charts of the Department of Aeronautics and could not be used by anyone other than Huebner himself who did not own an airplane. The record further discloses that at the time of the hearing in February 1978, the airstrip had never been utilized.

An airport is clearly defined by the provisions of section 3-101 (6), R. R. S. 1943, and specifically excludes restricted landing areas.

Further, a reading of the State Aeronautics Department Act (§§ 3-101 to 3-154, R. R. S. 1943) discloses that there are in fact two types of restricted landing areas. One may be used or made available for the landing and taking off of aircraft as provided from time to time by the Commission, and a second type is limited to *personal use only.* (Emphasis supplied.) §§ 3-101 (8) and 3-136, R. R. S. 1943.

Under the provisions of section 3-133, R. R. S. 1943, the Department of Aeronautics is authorized to license airports and restricted landing areas. However, section 3-136, R. R. S. 1943, provides that the provisions of sections 3-133 to 3-135, R. R. S. 1943, shall *not* apply to restricted landing areas designed for personal use. In other words, a restricted landing area designed for personal use is exempted from the licensing requirements of section 3-133, R. R. S. 1943. The fact that the Department of Aeronautics chose to issue a piece of paper purporting to be a license for a facility, in spite of the exemption contained in section 3-136, R. R. S. 1943, does not cause

that facility to rise to the dignity of a licensed restricted landing area within the meaning of section 75-715, R. R. S. 1943. Huebner argues, even though section 3-136, R. R. S. 1943, specifically exempts restricted landing areas for personal use only, that under the general regulation authority granted the Department of Aeronautics by section 3-128, R. R. S. 1943, the Department of Aeronautics could nevertheless adopt a rule to license and regulate restricted landing areas for personal use only. Such an argument cannot be maintained. An administrative board has no power or authority other than that specifically conferred upon it by statute or by a construction necessary to accomplish the purpose of the act. Scotts Bluff County v. State Board of Equalization and Assessment, 143 Neb. 837, 11 N. W. 2d 453; City of Auburn v. Eastern Nebraska Public Power Dist., 179 Neb. 439, 138 N. W. 2d 629. In view of the fact that section 3-136, R. R. S. 1943, specifically exempted restricted landing areas designed for personal use only from licensing requirements, the Department of Aeronautics was without authority to license such facilities and could not destroy the exemption contained in section 3-136, R. R. S. 1943, by adopting a contrary rule under the provisions of section 3-128, R. R. S. 1943. In truth and in fact such areas could have been created and used by Huebner without any permission from the Department of Aeronautics. See Bruns v. City of Seward, 186 Neb. 658, 185 N. W. 2d 853, where this court observed that personal use airports were permitted without certificate by the department's practice. The facilities used by Huebner were neither a licensed airport nor a licensed restricted landing area within the meaning of section 75-715, R. R. S. 1943, and the Director of the Department of Aeronautics was not required to notify Huebner nor was Huebner an affected person within the meaning of section 75-715, R. R. S. 1943. The failure of the Department of Aeronautics

to specifically notify Huebner of the hearing before the Commission which led to the granting of the application on September 22, 1977, was not a defect which affected the validity of the Commission's order entered on that date. The order entered on September 22, 1977, was in all respects valid and binding and became a final order 30 days thereafter.

If the order of September 22, 1977, was then a valid and binding final order, could the Commission revoke that order and deny the application more than 4½ months after it was first entered? We believe it could not.

While it may be true, under certain circumstances not involved in this case, the Commission may have authority to modify its own previously granted orders, it is clear from a reading of this record that no such circumstances justifying such action existed. The Commission's order of September 22, 1977, was a final order and could not be revoked either on the motion of an interested party or on the Commission's own motion.

Section 75-136, R. R. S. 1943, provides: "If a party to any proceeding is not satisfied with the order entered by the commission, such party may appeal to the Supreme Court as provided in section 75-137 to reverse, vacate, or modify the order." Section 75-137, R. R. S. 1943, provides an appeal procedure, including the filing of a notice of appeal with the Commission within 30 days after date of the mailing of a copy of the order by the Commission, or by the filing of a motion for rehearing within 10 days after the date of the mailing of a copy of the order by the Commission. Section 75-137, R. R. S. 1943, further provides that if the Commission fails to rule on a motion for rehearing within 30 days after such motion is filed, the appeal to the Supreme Court may be perfected by filing a notice of appeal even before the Commission enters an order ruling on the motion for

rehearing and the review by the Supreme Court shall be the same as if the Commission had overruled the motion for rehearing. It is clear from a reading of that section that individuals must act in accordance with statutory time prescribed therein and upon failure to do so are precluded from proceeding to object to the order. In re Application of Chicago, B. & Q. R. R. Co., 154 Neb. 281, 47 N. W. 2d 577.

Likewise, the Commission itself is also limited under normal circumstances to modify or revoke its own order. We have heretofore held that the Commission may reconsider an order on its own motion during the 30 days after the mailing of a copy of the order and before an appeal to this court has been taken. Upon the expiration of 30 days from the mailing of a copy of the order, or upon an appeal being perfected to this court, the power of the Commission to reconsider its order upon its own motion terminates. Andrews Van Lines, Inc. v. Smith, 187 Neb. 533, 192 N. W. 2d 406. It would, therefore, be a strange situation if under normal circumstances neither an interested party nor the Commission itself could affect a final order after the passage of 30 days and yet the Commission could in some manner revoke its previous order 137 days after initially entering it. We believe that our previous holding in Andrews Van Lines, Inc. v. Smith, *supra,* has equal application in the case at bar, and find that upon the expiration of 30 days from the mailing of a copy of the order of the Commission, the power of the Commission to reconsider its own order entered on September 22, 1977, terminated. There must be some finality to judgments and persons must be able to rely at some point in time upon the action of an administrative body. To hold otherwise would be to promote uncertainty and chaos. We, therefore, find that the order of the Commission entered on September 22, 1977, granting authority to the District to con-

struct the line, having become final, could not thereafter be revoked, and accordingly, we reverse the action of the Public Service Commission entered on February 6, 1978, and reinstate the previous order of September 22, 1977.

REVERSED.