**CITY OF AMES, Iowa, Plaintiff,**

v.

**STORY COUNTY, Iowa, and Leslie T. Beck, Defendants.**

No. 85–1578.

Supreme Court of Iowa.

Aug. 20, 1986.

John R. Klaus, Beth Ringgenberg, Ames, for plaintiff.

Robert A. Hutchison and Monte R. Hanson of Brown, Winick, Graves, Donnelly, Baskerville & Schoenebaum, Des Moines, and Mary E. Richards, Co. Atty., for defendants.

Considered by REYNOLDSON, C.J., and HARRIS, McGIVERIN, LARSON, and CARTER, JJ.

HARRIS, Justice.

The city of Ames seeks to construct a waste disposal plant outside its corporate limits. The city and its proposed construction site are within Story County. The city's applications for construction permits from the county were refused and this litigation followed. The dispute, pitting one local government against another, presents the question of whether city-owned property is subject to county zoning regulations. Our answer is that it might or might not be, the determination to be made upon balancing the conflicting interests of the two local governments. We reverse and remand for further proceedings.

The city's door for construction of the plant was in effect bolted by two interrelated locks. There were two keys to these locks and the county possessed both of them. One key was the conditional use permit, routinely demanded by county zoning ordinances. The second key involved the location of the proposed project on a flood plain. Because the proposed plant would encroach on a flood plain of the Skunk River, the city also applied for a flood management permit.

*The Conditional Use Permit.* Story County's zoning commission holds the power to regulate the use of land in the county outside the corporate limits of any city. *See* Iowa Code § 358A.3 (1985). Under this authority the Story County board of adjustment, organized under section 358A.10, by ordinance requires a conditional use permit before a structure such as the proposed plan can be erected. When the city applied for a conditional use permit it was denied by the board of adjustment. The board acted after hearing objections by two groups: those who feared their property values would be impaired by the nearby plant and those downstream who feared adverse effects on their health and welfare.

*The Flood Management Permit.* Because the proposed site lies within the flood plain of the Skunk River the property was subject to the flood plain control provisions of Iowa Code section 455B.276 (1985). Under that section the Iowa department of water, air, and waste management (DWAWM) is given authority to regulate construction on flood plains but may delegate the authority to a local county. Delegation of this authority to Story County had in fact occurred. *See* 900 Iowa Admin. Code § 75.7.

In accordance with the DWAWM's delegation the county adopted regulations to control developments on local flood plains. Under one such regulation the city was required to secure a special use permit before a flood plain permit could be issued. The city applied for this permit but it was denied by the county administrator, defendant Leslie T. Beck, because the city had failed to obtain the zoning permit.

The city thereafter brought this suit seeking a declaratory judgment that the ordinance requiring a conditional use permit be declared void and invalid as applied to the city. The city also sought a writ of mandamus compelling the county to grant the flood plain management permit. The trial court denied relief and this appeal followed.

I. Disputes between local governments in zoning matters of this kind are neither frequent nor altogether unique. It would seem inevitable, given the expanding nature of local government activities, that conflicts should arise in matters of zoning. The courts have devised differing techniques or tests for resolving these conflicts. The most traditional method of resolution has been to apply the governmental-proprietary test. Under this test, which the city asks us to apply, a governmental

entity is immune from zoning regulations if the proposed use of the property constitutes a "governmental" function. The governmental immunity doctrine extends to municipalities exercising governmental functions. 8 McQuillin, *The Law of Municipal Corporations* § 25.15 (3d ed. rev. 1985). If, however, the entity acts in a "proprietary" capacity, it remains subject to the regulations. Note, *Governmental Immunity From Local Zoning Ordinances*, 84 Harv.L.Rev. 869, 869–70 (1971). A commentator provides the following guidelines for distinguishing between governmental and proprietary functions:

> A governmental function is involved when the municipality acts pursuant to and in furtherance of obligations imposed by legislative mandate. The function will be deemed proprietary, however, when it is of a permissive nature—that is, the political unit has the power but not the duty to perform that act.

5 Rohan, *Zoning and Land Use Controls* § 35.07[1], at 35–60 (1986).

There is at least some validity to the city's contention that our own past cases have applied the governmental-proprietary test. *Compare City of Bloomfield v. Davis County Community School District*, 254 Iowa 900, 904–07, 119 N.W.2d 909, 912–13 (1963) (school district is not subject to municipal zoning which would prohibit construction of a gasoline storage facility on school-owned property) *with Cedar Rapids Community School District v. City of Cedar Rapids*, 252 Iowa 205, 212, 106 N.W.2d 655, 659 (1960) (school district is subject to city building ordinances, as distinguished from zoning ordinances, in renovating and constructing school buildings).

Other jurisdictions have applied the governmental-proprietary analysis to similar facts and have reached varying conclusions. *See generally* Annot., 59 A.L.R.3d 1244 (1974) (collecting cases where governmental-proprietary distinction applied to decisions in which governmental entity proposes to establish a waste disposal facility within the limits of another governmental

unit); 5 Rohan, *supra*, § 35.07[1], at 35–61 (listing cases where "municipal functions such as sewage, garbage disposal, and the operation of water supply facilities have been categorized as both governmental and proprietary in different jurisdictions.").

The governmental-proprietary distinction has been sharply criticized in recent years, largely because it has led to contradictory results in relatively similar situations. *See, e.g., Lincoln City v. Johnson*, 257 N.W.2d 453, 457 (S.D.1977) (criticizing test because "classification of a particular function may vary from jurisdiction to jurisdiction"); *see also City of Fargo v. Harwood Township*, 256 N.W.2d 694, 696 (N.D.1977) (noting that test has "come under attack for vagueness and difficulty of application, as there are no clear rules to determine when a function is a governmental one"). Other shortcomings of the distinction between governmental and proprietary functions have also been noted by both courts and commentators. *See, e.g.,* Note, *Governmental Immunity From Zoning*, 22 B.C. L.Rev. 783, 793–94 (1981) (noting that, because distinction derives from a concept used to limit sovereign tort immunity, it has been criticized as inappropriate for resolving zoning disputes).

II. Because of dissatisfaction with the governmental-proprietary analysis, courts have turned to other tests to determine when a governmental entity should be granted immunity from a zoning ordinance. Four other tests have been applied: (1) the "superior sovereign" test; (2) the "eminent domain" test; (3) the "statutory guidance" test, and (4) the "balancing of interests" test.

One commentator has described the "superior sovereign" test as follows:

> [The superior sovereign test] presumes that agencies occupying a superior position in the governmental hierarchy are immune from zoning regulations enacted by a lower echelon of government unless there is express statutory language to the contrary. This presumption is based on the rationale that agencies have statewide authority and responsibility that

transcends local boundaries. Nevertheless, a governmental unit cannot flagrantly disregard zoning restrictions in its determination of land uses. Where the reasonableness of governmental action is subject to question, the presumption of immunity can be rebutted.

5 Rohan, *supra*, § 35.07[2], at 35–62—35–63. There are, however, practical difficulties inherent in determining a hierarchical ranking of governmental agencies. As a result the test appears to have been applied in only a minority of jurisdictions. *See* Note, *Governmental Immunity From Local Zoning Ordinances*, 84 Harv.L.Rev. at 878 (" '[S]uperior authority' in the political hierarchy does not necessarily imply superior ability in allocating land uses.").

Another test used by some courts to determine whether a governmental entity is immune from a zoning ordinance is the "eminent domain" test. Under this test any body with the power to condemn is immune from zoning restrictions. *See State ex rel. Askew v. Kopp*, 330 S.W.2d 882, 889 (Mo.1960); *Seward County Board of Commissioners v. City of Seward*, 196 Neb. 266, 274–75, 242 N.W.2d 849, 854 (1976) (cases applying eminent domain theory). The eminent domain test has also been sharply criticized as impractical and oppressive and as a result has been either abandoned or "watered down" in recent years. *See* 5 Rohan, *supra*, § 35.07[3], at 35–66—35–67 (criticism of rule has led to "rule of reason" which "requires the court to examine the reasonableness of the condemning authority's action by focusing upon the nature and the political and geographical context of the use.").

A third test which has been applied to zoning immunity disputes is the "statutory guidance" test. Under this approach courts look for statutes which authorize a governmental entity to perform a certain land use planning function. Such a statute will usually be held superior to a local zoning ordinance. As one commentator has noted, however, "[a] few courts … have taken the view that a statutory grant of authority to perform a specified function

does not automatically exempt the agency from zoning restrictions and that such exemption must be explicitly provided by the statute." 5 Rohan, *supra*, § 35.07[4], at 35–68—35–69.

III. The foregoing alternatives provided little or no improvement over the traditional governmental-proprietary test. Hence the courts increasingly are turning to a "balancing of interests" analysis in determining whether a governmental body is immune from a zoning ordinance. The Minnesota supreme court applied a "balancing of interests" analysis in *Town of Oronoco v. City of Rochester*, 293 Minn. 468, 197 N.W.2d 426 (1972). In that case the city of Rochester sought a permit from the county to operate a sanitary landfill. The commission refused to grant the permit, but the district court ordered that it be issued. In affirming the trial court the Minnesota supreme court specifically rejected the governmental-proprietary test, instead adopting a "balancing of interests" analysis:

> The exigencies of the present matter … illustrate the core of wisdom in that general rule and the danger in too readily assuming enlightenment where none in fact may exist in the implementation of a particular local zoning policy. Therefore, we adopt a balancing-of-public-interests test for the resolution of conflicts which arise between the exercise by governmental agencies of their police power and their right of eminent domain. This is preferable to adherence to a less flexible "general rule" based simply on the form of the opposing parties rather than the substance of their conflict.

*Id.* at 471, 197 N.W.2d at 429. For a thorough discussion of cases from other jurisdictions which have also applied a balancing of interest test, *see* Rohan, § 35.07[4][5] at 35–69—35–72; 22 B.C.L.Rev. at 796–807.

Those arguing in favor of the more traditional tests generally do so on the basis of the relative ease with which they can be employed. The city, in resisting the sug-

gestion that we adopt the balancing of interests test contends it

would make the court a super regulatory agency. Under such a test the court would weigh the need for the use in question, the effect upon the zoning plan, neighboring property, environmental impact and other relevant factors, and then decide whether a permit should be issued.

We are convinced that, although the application of the traditional tests may be easy for courts, they are hard for litigants. The present case gives a graphic example. Both local governments involved seem to proceed from the loftiest of motives and in the public interest. The proposed plant in some location is an obvious public necessity. The environmental concerns of both governments are factors of unquestioned importance. The resulting conflict should not turn on mere chance or on the perfunctory application of some test which is employed merely because it is simple.

■ Until the legislature provides some clear direction otherwise we adopt the balancing of interest test to resolve zoning disputes that arise between local governments.

IV. The trial court here did not apply any test in ruling on the city's motion to adjudicate law points. Its ruling simply stated that the county's zoning authority over the proposed site would remain "extant" unless the property is annexed by the city. The trial court concluded this meant the county could require the city to obtain the permits before beginning construction of the plant.

■ Resolution under the balancing of interests test we have adopted will be more complex. The legitimate public interests of both the city and the county must be recognized and weighed in the balance. The county can have no absolute veto over the construction or placement of the plant. On the other hand the city cannot proceed oblivious of the county's authority to zone all county lands outside corporate boundaries. To whatever extent they can be, all

conflicting governmental interests must be accommodated. Where they cannot be accommodated the court is to resolve the dispute, after weighing the interests, on the basis of the greater public good.

At trial on remand the parties may make showings in support of their contentions under the test we have adopted.

REVERSED AND REMANDED.

All Justices concur except CARTER, J., who dissents.

CARTER, Justice (dissenting).

I dissent. The issue this case presents is whether restrictions or conditions placed on land use by county zoning ordinances may be enforced against city-owned property located outside the city's corporate boundaries. In endeavoring to answer this question, the court departs from the long-recognized and salutary principle that land use regulation through zoning is a legislative matter. As a corollary to that principle, the judicial role in zoning should be limited to applying the law which the proper legislative body has established. The opinion of the court completely rejects that approach. It makes no effort to divine the existing legislative policy applicable to these types of disputes. Instead it entrusts to judges on an ad hoc basis the task of regulating land use.

The "governmental-proprietary" and "eminent domain" tests rejected by the majority are both premised on the theory that, under the policy of the law, governmental bodies are per se exempt from zoning regulations. I agree with the court that this approach is flawed. Offensive land uses are no less offensive when undertaken by public bodies. This does not mean, however, that courts should make the choice of what proper land use should be. That is inherently a legislative determination.

The "superior sovereign" and "statutory guidance" tests discussed in the court's opinion are not permissive formulas for deciding zoning controversies. They are juridical postulates which courts cannot ignore in deciding cases under the rule of

law. The superior sovereign doctrine simply recognizes (as it must) that an inferior sovereign is without legislative jurisdiction to regulate the affairs of a superior sovereign. The statutory guidance doctrine simply reflects the recognition that, because zoning is a legislative issue, the beginning point in resolving zoning disputes between public bodies is a search for the legislative intent underlying the applicable statutes or ordinances.

In seeking to resolve the present dispute, I believe this court should follow the same path the trial court traversed. This requires tracing the grant of zoning power down from the state legislature to the county board of supervisors. At least one and perhaps two questions must then be answered. The first is whether the power to regulate land use entrusted to the counties by the legislature was intended to include the power to regulate city-owned property. If the answer to this question is no, then the present case must be decided in favor of the city. If the answer to the foregoing question is yes, then the court must determine whether the land use which the city seeks to employ in the present case is contrary to the applicable county zoning ordinance. The trial court answered both of these questions in the affirmative. On the record presented, I would uphold that determination.