THE AIRPORT AUTHORITY OF THE VILLAGE
OF GREELEY, NEBRASKA, A BODY POLITIC AND
CORPORATE, APPELLEE, v. MARVIN W. AND
MARY C. DUGAN, APPELLANTS.

612 N.W.2d 913

Filed June 30, 2000.    No. S-99-191.

Steven M. Curry, of Sampson, Curry & Hummel, P.C., for appellants.

William J. Panec for appellee.

HENDRY, C.J., WRIGHT, CONNOLLY, GERRARD, STEPHAN, MCCORMACK, and MILLER-LERMAN, JJ.

WRIGHT, J.

## NATURE OF CASE

Marvin W. and Mary C. Dugan appeal from an order of the district court for Greeley County which denied their application for an injunction and granted a writ of assistance to the Airport Authority of the Village of Greeley, Nebraska.

## SCOPE OF REVIEW

■ An action for an injunction sounds in equity. *Central States Found. v. Balka*, 256 Neb. 369, 590 N.W.2d 832 (1999).

■ In an appeal of an equity action, an appellate court tries factual questions de novo on the record, reaching a conclusion independent of the findings of the trial court. *Cao v. Nguyen*, 258 Neb. 1027, 607 N.W.2d 528 (2000).

## FACTS

The Greeley Airport Authority (hereinafter referred to as "former airport authority") was created by the village of Greeley on July 20, 1971. In 1991, the former airport authority instituted

condemnation proceedings to enlarge the municipal airport. Part of this expansion included the condemnation of real estate located in Section 2, Township 18 North, Range 11 West of the 6th P.M., Greeley County, Nebraska. This property was owned by the Dugans, who refused to sell the land to the former airport authority. The former airport authority then attempted to obtain the real estate through condemnation.

In July 1994, Marvin Dugan petitioned the Greeley County District Court, alleging that the former airport authority was no longer a legal entity and should be dissolved. In support of his position, Dugan relied upon Neb. Rev. Stat. § 3-502 (Supp. 1971), which provided that an airport authority's board and its corporate existence should continue only for a period of 20 years from the date of appointment of the members and thereafter until all its liabilities have been met and its bonds have been paid in full or have otherwise been discharged.

The district court denied the relief that Marvin Dugan sought in his petition. However, in an unpublished opinion filed October 29, 1996, the Nebraska Court of Appeals reversed on the basis that the former airport authority had failed to prove its continuing corporate existence after May 10, 1994, which was the point 20 years after its inception at which the former airport authority had no outstanding liabilities that would justify its continued existence. See *Dugan v. Greeley Airport Auth.*, 96 NCA No. 42, case No. A-95-352 (not designated for permanent publication).

In its continuing attempts to expand the Greeley Municipal Airport, the board of trustees of the village of Greeley "activated" the former airport authority on December 3, 1996. The newly activated airport authority became known as the Airport Authority of the Village of Greeley, Nebraska (hereinafter referred to as "new airport authority"). The new airport authority board approved condemnation proceedings on June 3, 1997. The board of trustees of the village of Greeley approved the new condemnation proceedings on June 25.

On October 23, 1997, the new airport authority filed a petition for appointment of appraisers to assess the damages which the Dugans would sustain by reason of the condemnation proceedings. The same day, the county court for Greeley County

appointed three appraisers for purposes of assessing damages which the Dugans would sustain by reason of the appropriation of the property and the related easements. The court also notified the Dugans that the petition for appointment of appraisers had been granted. The Dugans subsequently moved to dismiss, alleging that the new airport authority had failed to comply with chapter 25, article 25, of the Nebraska Revised Statutes by neglecting to give notice of its intention to acquire the real estate at least 45 days prior to beginning the negotiations; failed to hold a public meeting on the proposed acquisition at least 30 days prior to the negotiations with the Dugans; and failed to give proper notice of the hearing as required by law. The court denied the motion.

The return filed by the appraisers on February 19, 1998, concluded that the damages sustained as a result of the appropriation of title to the property and easements or any interest therein would amount to $55,551.50. This amount was calculated by multiplying 157.29 acres by $350 and then adding $500 for the easements.

On March 2, 1998, the Dugans appealed the assessment of damages to the district court for Greeley County. On appeal, the Dugans' first cause of action alleged, inter alia, that the new airport authority failed to comply with the provisions of chapter 25, article 25, in that it (1) failed to give notice to the Dugans of its intention to acquire the real estate at least 45 days prior to the beginning negotiation for such acquisition, (2) failed to hold a public meeting on the proposed acquisition at least 30 days prior to negotiation and give proper notice thereof, and (3) failed to attempt to negotiate with the Dugans prior to filing its petition in the county court. The Dugans' second cause of action alleged that the award of damages by the appraisers was not just compensation for the taking of their property. The Dugans requested that the new airport authority be enjoined from entering upon their land or from acquiring any interest in the property as the result of the actions and, in the alternative, for judgment in the amount of actual damages sustained in the taking, reasonable attorney fees, and costs in the event that the condemnation was allowed.

The Dugans subsequently filed an application for an injunction, alleging that the actions of the new airport authority were

without legal authority for the reasons that it had failed to comply with the provisions of chapter 25, article 25, and that it failed to give proper notice of the hearings, as required by Neb. Rev. Stat. § 25-2504 (Reissue 1995). The Dugans alleged an illegal taking of the property by the new airport authority which would result in irreparable injury and damage to the Dugans' right in the property.

On June 9, 1998, the new airport authority petitioned for writ of assistance in accordance with the provisions of Neb. Rev. Stat. § 76-711 (Reissue 1996). The airport authority requested that it be placed in possession of the land described in the petition and that an order be entered directing the Dugans to peaceably give up possession of the area condemned and to in no way interfere with, hinder, or prevent the airport authority from entering upon the land.

The district court denied the injunction and granted the writ of assistance. The court concluded that "[d]uring the period from May 10, 1994, to the date the mandate was returned by the Court of Appeals to this Court, some time after October 29, 1997 [sic]," the former airport authority was a de facto body politic and corporate. The court concluded therefore that all acts of the airport authority during that time were totally valid and that the notice given was sufficient to comply with the provisions of chapter 25, article 25. The Dugans timely appealed.

## ASSIGNMENTS OF ERROR

The Dugans assert that the district court erred in overruling their request for an injunction and in granting a writ of assistance to the new airport authority.

## ANALYSIS

The following issues are relevant to our consideration: whether the order denying the injunction and granting the writ of assistance is a final, appealable order; whether the new airport authority must bring the condemnation action in the name of the village of Greeley; whether the actions of the former airport authority apply to the subsequent condemnation action; and whether the new airport authority complied with the requirements of chapter 25, article 25.

■ We first consider whether the order which granted the writ of assistance and denied the injunction is a final, appealable order. Before reaching the legal issues presented for review, it is the duty of an appellate court to determine whether it has jurisdiction over the matter before it. *Greater Omaha Realty Co. v. City of Omaha*, 258 Neb. 714, 605 N.W.2d 472 (2000). A party may appeal from a court's order only if the decision is a final, appealable order. *Raney v. Blecha*, 258 Neb. 731, 605 N.W.2d 449 (2000). An order is final if it affects a substantial right and (1) determines the action and prevents a judgment, (2) is made during a special proceeding, or (3) is made on a summary application in an action after judgment is rendered. *City of Omaha v. Morello*, 257 Neb. 869, 602 N.W.2d 1 (1999). The district court granted the writ of assistance, but it has not yet determined the merits of the Dugans' appeal.

■ When an order affects the subject matter of the litigation, by diminishing a claim or defense available to a defendant, this affects a substantial right. *Hernandez v. Blankenship*, 257 Neb. 235, 596 N.W.2d 292 (1999). The district court's order placed the new airport authority in possession of the property at issue. In *Monarch Chemical Works, Inc. v. City of Omaha*, 203 Neb. 33, 277 N.W.2d 423 (1979), the owner of an industrial property filed an action to enjoin condemnation proceedings allegedly instituted under the authority of a community development law. The district court permanently enjoined the condemnation proceedings, and the city appealed. We held that an injunction is a proper form of remedy in which to present the question of unlawful or improper exercise of the power of eminent domain and that proof of the attempt to so deprive a private citizen of his or her property made the resulting damage irreparable and the legal remedy inadequate.

In *Burger v. City of Beatrice*, 181 Neb. 213, 147 N.W.2d 784 (1967), the city instituted condemnation proceedings to take restrictive easements over the plaintiffs' land, and the plaintiffs sought to enjoin the condemnation proceedings. In addressing the city's argument that an injunction was not a proper remedy, we stated that "[t]his court is committed to the rule that injunction is a proper action in which to present the question of unlawful or improper exercise of the power of eminent domain." *Id.* at 217, 147 N.W.2d at 788.

In *Greater Omaha Realty Co.*, the city petitioned to condemn property which was the subject of proposed redevelopment, and the property owners brought separate actions for declaratory judgment that the takings were unconstitutional. In the declaratory judgment actions, the trial court granted summary judgment in favor of the city and other defendants, and the property owners appealed. During the appeal, construction on the property continued. The property owners did not request a stay of condemnation proceedings or a temporary injunction pending the outcome of the appeal. At the time the case was argued before this court, construction of the three-story building had been completed, and the city had taken possession of the property. We held that because of the equitable relief that was sought, the appeals were moot. The takings that the property owners claimed were unconstitutional had already occurred, and therefore, equitable relief was not available because equity would not seek to declare unlawful an action that had already been completed.

Here, the Dugans have requested equitable relief before the project and construction have been commenced. We therefore conclude that the denial of a temporary injunction in the condemnation proceeding is an order that affects a substantial right and determines the action with regard to the request for equitable relief. The order of the district court was final and therefore appealable.

We next consider whether the district court erred in denying the application for an injunction. The Dugans assert that they are entitled to an injunction because the new airport authority failed to comply with the provisions of chapter 25, article 25, by neglecting to give notice of its intention to acquire the real estate at least 45 days prior to beginning the negotiations; failed to hold a public meeting on the proposed acquisition at least 30 days prior to the negotiations with the Dugans; and failed to give proper notice of the hearing as required by law. The Dugans allege that they will suffer irreparable injury from the taking of the real estate by the airport authority.

Section 3-502 (Reissue 1997) provides that any city may create an airport authority to be managed and controlled by a board, which board, when and if appointed, shall have full and

exclusive jurisdiction and control over all facilities owned or thereafter acquired. The existence of an airport authority is dependent upon the city which created it, and it is an agency of that city. See *Airport Authority of City of Millard v. City of Omaha*, 185 Neb. 623, 177 N.W.2d 603 (1970). Municipal airport authorities are authorized to acquire property by condemnation for establishing airports. See *Seward County Board of Commissioners v. City of Seward*, 196 Neb. 266, 242 N.W.2d 849 (1976). Every airport authority has the power to sue and be sued and, pursuant to Neb. Rev. Stat. §§ 3-503 (Reissue 1997) and 3-504(4) (Cum. Supp. 1998), has authority to acquire in the name of the city, by purchase or condemnation, real property or rights or easements therein necessary or convenient for its corporate purposes.

There are certain notice requirements that must be satisfied when private property is acquired for public use. Any agency which proposes to acquire private property for a public purpose shall give notice of such proposed acquisition at least 45 days before beginning negotiations for such acquisition. The notice shall be directed to each owner of property over or across which any right or interest is to be acquired and shall be deemed properly given if delivered personally or mailed by registered or certified mail addressed to the property owner and to the address shown on the tax records in the office of the county treasurer. Neb. Rev. Stat. § 25-2503 (Reissue 1995). In addition, § 25-2504 provides:

> After giving notice pursuant to section 25-2503, the agency shall hold a public hearing on the proposed project and acquisition at least thirty days before beginning negotiations for such acquisition. . . .
>
> At the hearing, the agency shall explain the nature of and necessity for the project for which it seeks to acquire property, the reasons for selecting the particular location or route, the right of each owner of property to be represented by an attorney and to negotiate and accept or reject the offer of damages which will be sustained by the proposed acquisition, and the right to require that such damages be determined pursuant to the procedures for acquisition by eminent domain.

The purpose of the hearing provided for in the uniform procedure for acquiring property for public use is merely to explain the taking and to inform landowners of their procedural rights. See *Seward County Board of Commissioners v. City of Seward, supra.*

In denying the injunction and granting the writ of assistance, the district court determined that notice of the airport project and the intended acquisition of land owned by the Dugans had been satisfied by a letter to the Dugans from the former airport authority dated March 17, 1994. The court further found that a legal notice published in "The Greeley Citizen," stating the time, date, and place of the special meeting to be held on April 18, was sufficient to comply with § 25-2504. The court concluded that the new airport authority had the benefit of the actions taken by the former airport authority.

An action for an injunction sounds in equity. *Central States Found. v. Balka*, 256 Neb. 369, 590 N.W.2d 832 (1999). In an appeal of an equity action, an appellate court tries factual questions de novo on the record, reaching a conclusion independent of the findings of the trial court. *Cao v. Nguyen*, 258 Neb. 1027, 607 N.W.2d 528 (2000). Therefore, we will independently consider the findings of the district court.

Sections 3-503 and 3-504(4) provide that the airport authority may acquire real property in the name of the city in which it was established. Statutory interpretation presents a question of law, in connection with which an appellate court has an obligation to reach an independent conclusion irrespective of the decision made by the court below. *Philpot v. Aguglia, ante* p. 573, 611 N.W.2d 93 (2000). In *Seward County Board of Commissioners v. City of Seward*, 196 Neb. 266, 267-68, 242 N.W.2d 849, 851 (1976), the eminent domain proceedings were instituted in an action entitled "City of Seward, Nebraska, for and on behalf of the Seward Airport Authority, condemners, v. Edward W. Brinkmeyer, Jr. . . . condemnees." We conclude that the action in this case should have been commenced by the village of Greeley for and on behalf of the new airport authority.

Next, we address whether there was proper and sufficient notice regarding the condemnation. The notices given by the former airport authority do not apply to the notices required to be given by the new airport authority. The Court of Appeals

determined that the former airport authority ceased its existence after May 10, 1994. See *Dugan v. Greeley Airport Auth.*, 96 NCA No. 42, case No. A-95-352 (not designated for permanent publication). Therefore, after the decision of the Court of Appeals was filed on October 29, 1996, no activity could be attributed to the former airport authority.

The parties agree that the new airport authority was created by resolution of the village board of trustees on December 3, 1996. Although the record does not establish whether the new airport authority was properly created, assuming without deciding that this airport authority was properly created, we proceed to address whether it complied with the notice requirements of chapter 25, article 25.

No legal action can be maintained by a corporation after it has been dissolved and no longer exists as a corporate entity. See *Farmers Union Co-op Assn. v. Mid-States Constr. Co.*, 212 Neb. 147, 322 N.W.2d 373 (1982). The new airport authority was required to comply with the notice requirements set forth in chapter 25, article 25. The notices given by the former airport authority were not valid as to the actions of the new airport authority. Therefore, the district court erred in determining that the notice requirements had been satisfied.

The district court should have granted the Dugans' request for an injunction.

> When it appears by the petition that the plaintiff is entitled to the relief demanded, and such relief or any part thereof consists in restraining the commission or continuance of some act, the commission or continuance of which during the litigation would produce great or irreparable injury to the plaintiff, or when, during the litigation, it appears that the defendant is doing, or threatens, or is about to do, or is procuring or suffering to be done, some act in violation of the plaintiff's rights respecting the subject of the action and tending to render the judgment ineffectual, a temporary injunction may be granted to restrain such act . . . .

Neb. Rev. Stat. § 25-1063 (Reissue 1995). We conclude that the underlying action should have been brought in the name of the village of Greeley for or on behalf of the new airport authority and

that the new airport authority, if duly created, has not complied with the notice requirements set forth in §§ 25-2503 and 25-2504.

For the reasons set forth herein, we conclude that the actions by the new airport authority constitute an unlawful taking of the Dugans' property. We therefore reverse the judgment of the district court which granted a writ of assistance and denied the temporary injunction. Since the action has not been brought in the name of the village of Greeley as required by law and proper notice has not been given as required by chapter 25, article 25, of the Nebraska Revised Statutes, such condemnation proceedings are fatally defective. We therefore remand the cause with directions that the district court enter an order reversing the order of condemnation entered by the county court and directing the county court to dismiss the proceedings.

REVERSED AND REMANDED WITH DIRECTIONS.