CHARLES M. THOMSON, TRUSTEE, APPELLANT, v. NEBRASKA STATE RAILWAY COMMISSION, APPELLEE.

6 N. W. (2d) 607

FILED DECEMBER 4, 1942. No. 31449.

478

*Wymer Dressler* and *Robert D. Neely,* for appellant.

*Walter R. Johnson, Attorney General,* and *Edwin Vail, contra.*

Heard before SIMMONS, C. J., ROSE, EBERLY, PAINE, CARTER, MESSMORE and YEAGER, JJ.

YEAGER, J.

This is an appeal by Charles M. Thomson, trustee of the property of Chicago & Northwestern Railway Company, appellant, from an order of the Nebraska state railway commission, appellee, denying the appellant authority to

discontinue the service of an agent at Emmet, Holt county, Nebraska, a station on the line of the Chicago & Northwestern Railway Company, and to substitute therefor a caretaker.

The substance of the reason for the application to discontinue the service of the agent at this point is a claim that the business of the station and the convenience of shippers do not justify the cost of retaining an agent at this point, and that the order appealed from is arbitrary, unreasonable, null and void, and deprives the carrier of its property without due process of law under the state and federal Constitutions. It is pointed out that the cost of maintaining an agent is approximately $1,600 a year, whereas the cost of a caretaker would involve only the furnishing of living quarters in the station with heat, water and light.

On appeal from an order of the state railway commission, the function of this court is to determine the questions of whether or not the action was unreasonable or arbitrary, and whether or not it exceeded any powers or violated any rule of law. The rule is stated in *Furstenberg v. Omaha & C. B. Street R. Co.*, 132 Neb. 562, 272 N. W. 756, as follows:

"On an appeal to the supreme court from an order of the railway commission administrative or legislative in nature, the only questions to be determined are whether the railway commission acted within the scope of its authority and if the order complained of is reasonable and not arbitrarily made. Where the action of the railway commission is not unreasonable or arbitrary and does not exceed its powers or violate a rule of law, this court will not interfere with its findings of fact for the reason that they involve administrative and legislative rather than judicial questions."

We direct our attention first to a determination of reasonableness of the order, and for this purpose it has become necessary to examine the evidence adduced by the parties relating to this matter.

The record discloses, among other things, that Emmet is a village in Holt county, Nebraska, with an advertised population of 89 inhabitants. It is situated on the line of the appellant and also on state highway 20, which is a main east and west arterial highway. It is 8.2 miles west of O'Neill and 9.8 miles east of Atkinson, which places are also on the line of the railroad. The trade territory of Emmet is estimated to extend 5 miles east, 6 miles west, 25 miles north and 25 miles south. The north half of the territory is generally devoted to farming and the south half to live stock production. The important products forwarded from the station at Emmet have been hay, grain, grass seed, cattle and hogs. The important products received have been coal, feed, gasoline, fuel oil, oil, potatoes, kerosene, cottonseed cake, asphalt, cattle, sheep, oil meal, agricultural implements and flour. The major portion of the shipments have been carload lots. In 1937, 299 carloads were forwarded; in 1938, 135; in 1939, 30; in 1940, 26; and from January to November, 1941, 61. In 1937, 17 carloads were received; in 1938, 25; in 1939, 16; in 1940, 33; and from January to November, 1941, 18. Shipments forwarded from Emmet in less than carload lots for 1937 were 15; 1938, 7; 1939, 2; 1940, 16; and from January to April, 1941, 4. Shipments received at Emmet in less than carload lots for 1937 were 236; 1938, 176; 1939, 202; 1940, 176; and from January to April, 1941, 75.

Computation based on these items shows 567 inbound and outbound shipments were handled through this station in 1937; 343 in 1938; 250 in 1939; 251 in 1940; from January 1, 1941, to December 1, 1941, 79 carload shipments; and from January 1, 1941, to May 1, 1941, 79 less than carload shipments. No information is furnished as to less than carload shipments from May 1, 1941, to October 1, 1941. We have therefore a record of a total of 158 shipments for the period covered in 1941.

It will readily be observed that in no full year set forth in the analysis, except 1937 and 1938, was the agent called on to perform service in connection with forwarding and

receiving freight as often as once per working day even assuming that each carload represented a separate shipment, and this application must be considered in its relation to freight shipments since the matter of passenger service was neither presented nor considered.

While it is not conclusive, we think the matter of time necessary to be devoted to the performance of duties by the agent is of very considerable importance in determining whether or not the commission acted arbitrarily and unreasonably in denying the application to discontinue the agency at Emmet. If this were the only consideration we could not hesitate to say that there was no justification for the retention of this agency. It would not be reasonable to require the carrier to pay the prevailing wage for an agent for the small amount of service required.

Historically and legally a common carrier, in addition to being a commercial and transportation enterprise for profit, is a public service facility with duties owing to the domain it traverses, and to the people resident and commercially engaged in the areas tributary to the carrier. The necessities, requirements and convenience of the tributary areas must be considered and, moreover, reasonably protected.

This application considered in this light brings us to the very definite conclusion that necessity does not require the maintenance of an agent at Emmet. The evidence is conclusive on the proposition that all of the essential service now furnished by an agent may be supplied by a caretaker, however, with a degree of inconvenience.

If abandonment is allowed, no physical facility will be abandoned or changed and no essential service discontinued. The important inconveniences will be that no paper work may be done at Emmet, no freight bills for either incoming or outgoing freight may be paid there, registration of complaints will have to be made elsewhere, incoming freight bills will have to be either prepaid or received at an adjacent station where there is an agent, and cars for loading will have to be ordered direct by the ship-

per or through the caretaker by telephone. There are perhaps other inconveniences, but these are the most important ones. Subject to these inconveniences business would continue as usual at this station.

Taking into consideration the amount of service required of an agent, the saving to be effected by substitution of a caretaker, the limited amount of shipping, the fact that no essential shipping service is discontinued, and the prospective inconvenience to the few shippers concerned, we conclude that the railway commission acted arbitrarily and unreasonably in denying the application to discontinue the employment of an agent at Emmet and to substitute a caretaker.

It is substantially urged that the income of the station for freight charges results in profit to the carrier and therefore the agency ought not to be discontinued. Of course this is an element to be considered along with all other elements, but assuming that the station is highly profitable to the carrier we know of no rule of law or reason which requires the expenditure of earnings from a particular community in that community contrary to the requirements of reasonable service. We, however, do not so assume and we cannot so conclude from the evidence adduced. We could not arrive at a safe and satisfactory conclusion on this proposition without having before us an analysis and accounting of all matters pertaining to operation of this carrier as a system.

It is also urged that with the contemplated increase in railroad transportation this agency should not be discontinued. This argument is purely prospective and speculative and can have no force or influence here. It may well be said that the ruling on this question by the railway commission or this court does not amount to an adjudication for the future. It is only a judgment on the condition presented by the application. If future conditions shall require restoration of an agency that matter may be taken care of by proper order in due course at the proper time and as the occasion requires. *Thomson v. Nebraska*

*State Railway Commission*, 141 Neb. 697, 4 N. W. (2d) 756.

The order of the railway commission is reversed and the cause remanded, with directions to the railway commission to enter an order allowing a discontinuance of an agency at Emmet, Nebraska, and allowing the substitution of a caretaker in accordance with the application of the appellant.

REVERSED.