In re Application of Chicago, Burlington & Quincy Railroad Company.
Chicago, Burlington & Quincy Railroad Company, appellant, v. Stamford Elevator Company et al., appellees.
138 N. W. 2d 816

Filed December 17, 1965. No. 36011.

Mason, Knudsen, Berkheimer & Endacott, for appellant.

Nelson, Harding & Acklie and D. A. Russell, for appellees.

Heard before WHITE, C. J., CARTER, SPENCER, BOSLAUGH, BROWER, SMITH, and McCOWN, JJ.

BOSLAUGH, J.

This is a proceeding before the Nebraska State Railway Commission upon an application by the Chicago, Burlington & Quincy Railroad Company for authority to dualize its agencies at Beaver City and Stamford, Nebraska, or, in the alternative, to discontinue the agency at Stamford, Nebraska. A formal protest to the granting of the application was filed by the Stamford Chamber of Commerce and Stamford Elevator Co. Letters of protest were filed by Naden's General Merchandise of Stamford, the Stamford Bank, the Stamford Watershed District, the Beaver City Chamber of Commerce, and the South Platte United Chambers of Commerce.

A hearing upon the application was held at Beaver City, Nebraska, before two members of the railway commission. The commission found that the efficient and economical management and operation of the railroad did not require that the application be granted, and denied the application. The applicant's motion for rehearing was overruled and it has appealed.

The applicant operates a branch line from Oxford, Nebraska, through Orleans, Stamford, and Beaver City, Nebraska, to St. Francis, Kansas. The train service on this line at this time consists of a mixed train running west to St. Francis, Kansas, on Monday, Wednesday, and

Friday, and east to Oxford, Nebraska, on Tuesday, Thursday, and Saturday.

Beaver City, Nebraska, has a population of approximately 820 people and is located in Furnas County. Stamford, Nebraska, has a population of approximately 220 persons and is located in Harlan County, approximately 13½ miles east of Beaver City. Both towns are located on State Highway No. 89, an all-weather, hard-surface road, and have common carrier truck service.

At the present time the applicant maintains regular full-time agents at Beaver City and at Stamford. The applicant proposes to eliminate the agent at Stamford and have the agent at Beaver City handle the business and duties of the agent at both stations. The schedule proposed by the applicant provides for the agent to be at Stamford for 2 hours and at Beaver City for 5 hours of each workday. The applicant will provide telephone service between the stations at its expense for the convenience of persons who wish to contact the agent.

The evidence shows that most of the business handled through the Stamford agency is freight in carload shipments. During the 12 months ending in November 1963, 88 carloads were forwarded and 18 received. In the same period 4 less-than-carload shipments were forwarded and 74 were received; 10 passenger tickets were sold; and 45 express shipments handled.

Hollinger is a closed station located about halfway between Stamford and Beaver City. The accounting for Hollinger is handled through the Stamford agency. During the 12 months ending in November 1963, Hollinger forwarded 81 carloads and received 2.

The applicant produced evidence that the average time required to perform the duties of the agent at Stamford is 2 hours and 2 minutes per working day. This includes the work connected with business at Hollinger. The average time required to perform the duties of the agent at Beaver City is 2 hours and 21 minutes. This includes some work connected with business at Hendley which is

a closed station handled partly through Beaver City. The total combined time required to handle the work at both agencies, including 1 hour allowed for the trip from Beaver City to Stamford and return, would be 5 hours and 23 minutes per working day. If the agencies were dualized, Beaver City would be the reporting station and but one report would be made for both stations. This would result in some economy of time because the combined report would take less time to prepare than the two separate reports.

The applicant also produced evidence that dualization would result in an estimated annual saving of $5,331.79. This saving would result from the elimination of part of the direct expense attributable to the Stamford agency.

The applicant produced further evidence that the operation of the Stamford station in 1963 resulted in a loss of $2,672. This computation assumed that expenses other than direct station expenses amounted to 82 percent of creditable revenues, which is the system average, and did not include revenue received through the Hollinger station. The use of system average data in computing station operating costs was approved in Chicago, R. I. & P. R.R. Co. v. Hebron Chamber of Commerce, 169 Neb. 867, 101 N. W. 2d 448. See, also, Missouri P. R.R. Co. v. Zimmerman Feed Yards, 176 Neb. 501, 126 N. W. 2d 679.

The protestants produced evidence that if the revenue creditable to the Hollinger station were added to the revenue creditable to the Stamford station, the operation of the Stamford station for the year 1963 would show a small net profit. There was testimony that the annual report of the railroad submitted to the railway commission indicated that the ratio of operating expense to revenue received was less in Nebraska than on a system basis. If the ratio computed from the annual report were used instead of the system ratio, the operation of the Stamford station in 1963 would show a net profit of $2,748.91.

The protestants also produced evidence relating to trends in agricultural production in the area, grain in storage, and prospects for increased use of rail facilities in the area.

The prime object and real purpose of Nebraska State Railway Commission control is to secure adequate, sustained service for the public at minimum cost, and to protect and conserve investments already made for this purpose. In doing this, primary consideration must be given to the public rather than to individuals. Missouri P. R.R. Co. v. Zimmerman Feed Yards, *supra.*

It is the duty of a carrier to seek, and of regulatory agencies to permit, the elimination of those services and facilities that are no longer needed or used by the public to any substantial extent. In re Application of Chicago, B. & Q. R.R. Co., 152 Neb. 352, 41 N. W. 2d 157.

Although the Nebraska State Railway Commission has broad powers of regulation, it does not enjoy the freedom of an owner of the carrier. Unless public necessity requires it, the discretion of the carrier in establishing and maintaining its stations should not be interfered with by the commission. Chicago, B. & Q. R.R. Co. v. Order of Railroad Telegraphers, 155 Neb. 387, 52 N. W. 2d 238.

The facilities and services to be furnished by a railroad company at any station need only be just, reasonable, and adequate to the requirements of the station, and should in a measure be commensurate with the patronage and receipts from that portion of the public to whom such service is rendered. The need for agency service should not be measured by financial results alone, but should be measured also by the agent's usefulness to the company as well as to the public. Thomson v. Nebraska State Railway Commission, 143 Neb. 52, 8 N. W. 2d 552.

The matter of time necessary to be devoted to the performance of duties by an agent of a railroad is a matter of importance in determining whether an application to discontinue the agency may be denied. Thomson v.

Nebraska State Railway Commission, 142 Neb. 477, 6 N. W. 2d 607.

When an application is made to discontinue an existing service or facility, the issue presented should be determined by the public need or lack of need therefor, as distinguished from local convenience. Chicago, R. I. & P. R.R. Co. v. Hebron Chamber of Commerce, *supra*. In the final analysis, the question to be determined is the public need or lack of need for the service. Chicago, B. & Q. R.R. Co. v. Keifer, 160 Neb. 168, 69 N. W. 2d 541.

The question to be determined in this case is whether the evidence is sufficient to support a finding by the railway commission that a public need exists for full-time agency service at both Stamford and Beaver City.

The protestants contend that the Stamford station does not operate at a loss and, therefore, the agency should not be discontinued. The protestants argue that the revenue from the Hollinger station should be considered as a part of the operation of the Stamford station. Upon that basis, they assert that the Stamford station in 1963 operated at a profit, the amount depending upon how expenses other than direct station expenses are computed and allocated.

Although the comparison between the cost of providing the service and the revenue derived therefrom is an element which should be considered, it is not necessarily controlling. Chicago, R. I. & P. R.R. Co. v. Hebron Chamber of Commerce, *supra*. There is no requirement that a railroad expend the earnings received from a particular community in that community contrary to the requirements of reasonable service. Thomson v. Nebraska State Railway Commission, 142 Neb. 477, 6 N. W. 2d 607. The following statement from Chicago, B. & Q. R.R. Co. v. Order of Railroad Telegraphers, *supra*, is applicable in this case: "In the case at bar, a large part of the record, briefs of counsel, and arguments as well have been devoted to the question of whether or not the car-

rier's theory of allocation of revenue and cost of opera- tion at the station involved was correct. We do not con- sider that question of prime importance except insofar as sums involved may measure the public need by indi- cating the extent of use or lack of use of the services there made available by the carrier. In other words, the carrier is not required to maintain standby station agency service not comprehensively used by the public, or to be used only when other established carriers fail to meet the need."

In reality, there is no relationship between Hollinger revenue and the need for a full-time agent at Stamford. The accounting for Hollinger, which is located about halfway between Stamford and Beaver City, can be done at either station. So far as the persons using the Stamford station are concerned, it is not important whether the accounting for Hollinger is handled at Beaver City or at Stamford. Consequently, Hollinger revenue is not a measure of the need for a full-time agency at Stamford.

If the agencies are dualized, there will be some incon- venience to patrons at each station. The inconvenience will result from the fact that an agent will be on duty only part time at each station instead of full time each working day. This inconvenience is not sufficient to require the maintenance of a full-time agency at both stations. Thomson v. Nebraska State Railway Commis- sion, 141 Neb. 697, 4 N. W. 2d 756. The substitute serv- ice, although less convenient, will be adequate to serve the public need.

In a similar case this court said: "The evidence clearly shows that the combining of the agencies at Or- chard and Brunswick will provide all essential services at these two points. The inconveniences testified to are not sufficient to justify an expenditure in excess of $5,000 to eliminate them. The evidence shows without substantial conflict that there is no actual public need for a full-time station agent at either point and that the

public need can be adequately served by one agent in the manner outlined by the carrier. Under such circumstances the denial of an application to dualize these two station agencies is not sustained by evidence and is unreasonable and arbitrary." Chicago, B. & Q. R.R. Co. v. Drayton, 172 Neb. 321, 109 N. W. 2d 369.

The record in this case shows that one agent can easily perform the duties at both stations within the time allotted. There is a lack of need for full-time agencies at both Stamford and Beaver City. The record does not support the action of the commission in denying the application to dualize the agencies.

In the event that conditions change and additional transportation requirements in the area create the need for a full-time agency at Stamford, the decision in this case will not be determinative of that situation. A ruling on an application for the discontinuance of an agency relates only to the time and conditions presented in the record and is not an adjudication for the future. Chicago, B. & Q. R.R. Co. v. Keifer, *supra*.

It is unnecessary to consider the applicant's other assignments of error.

The order of the Nebraska State Railway Commission is reversed.

REVERSED.