IN RE APPLICATION OF CHICAGO, BURLINGTON & QUINCY
RAILROAD COMPANY.
CHICAGO, BURLINGTON & QUINCY RAILROAD COMPANY,
APPELLANT, V. WILBER CHAMBER OF COMMERCE ET AL.,
APPELLEES.

138 N. W. 2d 711

Filed December 17, 1965.   No. 36027.

Mason, Knudsen, Berkheimer & Endacott, for appellant.

Clarence C. Kunc and William L. Monahan, for appellees.

Heard before WHITE, C. J., CARTER, SPENCER, BOSLAUGH, BROWER, SMITH, and McCOWN, JJ.

McCOWN, J.

This is an appeal from a decision of the Nebraska State Railway Commission denying an application to operate two railway agencies at Wilber and Swanton, Nebraska, with one agent working part-time at each station, commonly referred to as "dualization."

The applicant, hereafter referred to as "railroad," maintains two station agencies at Wilber and Swanton in Saline County, Nebraska. The population figures for Wilber are 1,360 and for Swanton, 190. The distance between these communities is 14.6 miles by highway and 15.24 miles by rail. The railroad maintains a full-time station agent at each community who is on duty for a full period of 8 hours a day, 5 days per week. The railroad applied for an order authorizing it to dualize the station agencies of Wilber and Swanton so that they can be handled by one agent serving part of the time at one station and part of the time at the other station, being available by telephone at either station for any business from the other station. The proposed schedule was: At Swanton 8:30 a.m. to 10:30 a.m., and at Wilber

from 11 a.m. to noon, and from 1 p.m. to 5 p.m. The 30 minutes between 8 a.m. and 8:30 a.m. and between 10:30 a.m. and 11 a.m. to be travel time between the communities.

During the 12 months ending March 31, 1964, 312 carload shipments were forwarded from Wilber, 124 carloads received, 14 less-than-carload shipments forwarded, and 81 less-than-carload shipments received. During the same period in Swanton, 279 carloads were forwarded, 38 carloads received, no less-than-carload shipments forwarded, and 15 less-than-carload shipments received. Total creditable revenue figures covering the years 1961, 1962, 1963, and the 12-month period ending March 1964 were:

|  | 1961 | 1962 | 1963 | 12 months ending March 1964 |
|---|---|---|---|---|
| Wilber | $50,483 | $48,678 | $49,424 | $48,254 |
| Swanton | 33,240 | 47,144 | 42,809 | 43,933 |
| Total | $83,723 | $95,822 | $92,233 | $92,187 |

For the 12 months ending in March 1964, Wilber had a profit of approximately $2,400 and Swanton a profit of about $1,800. Had the stations been dualized during the 12 months ending March 1964, the savings to the railroad because of reduced expenses would have been $5,567.05.

A time study of the agent's work at Wilber for the 12 months ending March 31, 1964, showed that an average of 2 hours and 19 minutes per working day was required during that period for the agent to perform all of his duties at Wilber. The time study of the agent's work at Swanton for the same period showed an average of 2 hours and 2 minutes per working day was required.

Train service at Wilber consists of one southbound train about 4:50 a.m. and a northbound train about 5:50 p.m. Train service through Swanton is an extra train

which moves westward through Swanton on Monday, Wednesday, and Friday and eastward on alternate days, each passing through Swanton between 1 and 3 p.m. on the average. There is no necessity for train orders to be issued at either station, nor for an agent to be on duty when the train comes through, and spotting cars is the train crew's job.

Under the proposed dualization, the business at both stations would be handled in the same manner as it is now except that the agent would be at each station only a part of a day. Shippers' telephone toll charges between the two stations incurred as a result of dualization would be absorbed by the railroad.

There was testimony on behalf of the protestants that business activity in and about Wilber was on the increase, and that an increase in railroad business might be anticipated in Swanton from the elevator company. A gravel operation near Wilber had recently constructed a railroad siding, and the Farmers Cooperative Elevator in Wilber was installing new equipment which should increase their incoming shipments. The operator of the gravel company testified that they normally want to contact the agent about 2 or 3 o'clock in the afternoon, and that if the agent was to be at Wilber in the afternoon, it would not inconvenience them. The elevator manager at Wilber testified that as to incoming shipments, his only interest is in getting the cars spotted, which is the train crew's job; that the additional incoming shipments will be prepaid; that he orders cars for outgoing shipments one day to be brought in the following day or some day after that; that any contact with the agent in the mornings would be to order cars; and that at the present time he contacts the agent by telephone as well as personally.

The manager of the Swanton Cooperative Elevator, which is overwhelmingly the largest shipper in Swanton, testified that the board had approved a new blending plant for bulk fertilizer which should require incoming

shipments of over 250 tons a year. This might be 10 or 15 carloads. He testified that he felt he could not get along without a full-time agent, but an analysis of the testimony shows that it is largely an expression of concern or fears which are not evidentially supported.

Hearing upon the application was held and the railway commission found that the continuation of a full-time agent at both Wilber and Swanton does not place an unreasonable burden upon the railroad nor result in an unnecessary depletion of revenue, and that the honest, efficient, and economical management and operation of the railroad did not require that the application be granted; and denied the application. This appeal followed.

On appeal to the Supreme Court from an order of the Nebraska State Railway Commission while acting within its jurisdiction, the question for determination is the sufficiency of the evidence to prove that the order is not unreasonable or arbitrary. Chicago, B. & Q. R.R. Co. v. Keifer, 160 Neb. 168, 69 N. W. 2d 541.

In a dualization case, no change in transportation is involved, nor in the nature of the agency services provided. The only change is in the hours it is provided at any one station. The basic issue involved in any such case is the use made of and the need for agency services at the points involved. The business of the carrier at both stations will be handled in the same manner as it is now except that the agent will be at each station only part of the day.

The time necessary to devote to the performance of duties by station agents is certainly a matter of importance in determining whether or not the Nebraska State Railway Commission acted arbitrarily and unreasonably. Thomson v. Nebraska State Railway Commission, 142 Neb. 477, 6 N. W. 2d 607. The record here shows that one agent could perform all the duties of both stations within the scheduled time, and even in peak periods. There is no evidence that one agent is not more than sufficient

to perform all the duties and provide adequate service to both communities.

The facilities and services to be furnished by a railroad company at any station need only be just, reasonable, and adequate to the requirements of the station, and should in a measure be commensurate with the patronage and receipts from that portion of the public to whom such service is rendered. Thomson v. Nebraska State Railway Commission, 143 Neb. 52, 8 N. W. 2d 552.

The appellees seem to take the position that so long as the agencies involved show a profit of any sort, a railroad cannot eliminate services or conveniences, nor even reduce the time they are offered each day, even though they are no longer needed or used by the public to any substantial extent nor required to provide adequate service. While costs and revenue and the resultant profit or loss must be considered, they are not necessarily controlling. There is no requirement that a railroad expend the earnings received from a particular community in that community contrary to the requirements of reasonable service. Thomson v. Nebraska State Railway Commission, 142 Neb. 477, 6 N. W. 2d 607. " 'The purpose of commission control of railroads is to secure adequate, sustained service for the public at a minimum cost. The commission is not in the position of an owner. It has a duty to the railroads as well as to the public. It must protect and conserve the investments in the railroads and insure a reasonable return to railroads that are efficiently maintained and operated.' " Chicago, B. & Q. R.R. Co. v. Drayton, 172 Neb. 321, 109 N. W. 2d 369.

"It is the function of management to operate economically and it is charged with the duty of reducing costs where it can do so and still continue to perform essential services to the public." Chicago, B. & Q. R.R. Co. v. Drayton, supra. "It is the duty of a carrier to seek, and of regulatory agencies to permit, the elimination of those services and facilities that are no longer needed or

used by the public to any substantial extent." Chicago, B. & Q. R.R. Co. v. Keifer, *supra*. This duty is not limited to localities where the railroad is losing money. A railroad company has a right to cut costs, meet competition, and show a profit. Indeed, that is its duty. It should not be prevented from doing so unless it is clearly established that the public will suffer substantial loss or inconvenience. When an application is made to discontinue an existing service or facility, the need for the service or facility and not mere local convenience provides the yardstick. Chicago, R. I. & P. R.R. Co. v. Hebron Chamber of Commerce, 169 Neb. 867, 101 N. W. 2d 448.

"The relation of costs to revenue is also an important element to be considered. When the service sought to be discontinued or modified is one of convenience rather than necessity, the question of expense to the company, the volume of business done, the community need, the revenue return, and the relative benefit to the public are factors that cannot be disregarded." Chicago, B. & Q. R.R. Co. v. Drayton, *supra*.

The evidence here shows that the combining of the agencies at Wilber and Swanton will provide all essential services at these two points. There is no evidence that one agent cannot perform all the work of both stations and supply the needs of the two communities. The minor difference in convenience involved is not sufficient to require an expenditure of well over $5,000 per year by the railroad company. The evidence shows without any substantial conflict that there is no actual public need for a full-time station agent at either point, and that the public need can be adequately served by one agent in the manner outlined by the carrier. Under such circumstances, the denial of an application to dualize the two agencies is not sustained by the evidence and is unreasonable and arbitrary.

The order of the railway commission is reversed.

REVERSED.