Nebraska Supreme Court Online Library
www.nebraska.gov/apps-courts-epub/
09/09/2022 08:06 AM CDT

- 813 -

Nebraska Supreme Court Advance Sheets
311 Nebraska Reports
IN RE APP. NO. P-12.32 OF BLACK HILLS NEB. GAS
Cite as 311 Neb. 813

In re Application No. P-12.32 of Black
Hills Nebraska Gas, LLC.
Metropolitan Utilities District, appellant, v.
Black Hills Nebraska Gas, LLC,
et al., appellees.

___ N.W.2d ___

Filed June 17, 2022.    No. S-21-620.

1. **Public Service Commission: Appeal and Error.** Under Neb. Rev. Stat. § 75-136(2) (Reissue 2018), an appellate court reviews an order of the Public Service Commission de novo on the record. In a review de novo on the record, an appellate court reappraises the evidence as presented by the record and reaches its own independent conclusions concerning the matters at issue.

2. **Administrative Law: Appeal and Error.** When an appellate court makes a de novo review, it does not mean that the court ignores the findings of fact made by the agency and the fact that the agency saw and heard the witnesses who appeared at its hearing.

3. ____: ____. Where the evidence is in conflict, an appellate court will consider and may give weight to the fact that the agency hearing examiner observed the witnesses and accepted one version of the facts rather than another.

4. **Administrative Law: Statutes: Appeal and Error.** The meaning and interpretation of statutes and regulations are questions of law for which an appellate court has an obligation to reach an independent conclusion irrespective of the decision made by the court below.

5. **Public Service Commission: Time: Presumptions.** The determination of the public interest with regard to a specific application to the Public Service Commission pursuant to Neb. Rev. Stat. § 66-1863 (Reissue 2018) is based on the conditions presented by the application and relates directly to the time and conditions presented, and it does

- 814 -

Nebraska Supreme Court Advance Sheets
311 Nebraska Reports
IN RE APP. NO. P-12.32 OF BLACK HILLS NEB. GAS
Cite as 311 Neb. 813

not amount to an adjudication for the future. Therefore, the conclusive presumption under § 66-1863(3) is conclusive as to the determination of the public interest based on the time and conditions presented by the specific application, and it does not constitute a permanent determination or a conclusive presumption as to an application that may be presented to the Public Service Commission under different conditions in the future.

Appeal from the Public Service Commission. Affirmed.

Mark A. Fahleson, Andrew S. Pollock, and Jennifer L. Ralph, of Rembolt Ludtke, L.L.P., and Mark Mendenhall and Marc Willis, of Metropolitan Utilities District, for appellant.

Trenten P. Bausch and Megan S. Wright, of Cline, Williams, Wright, Johnson & Oldfather, L.L.P., and Douglas J. Law, Associate General Counsel, Black Hills Energy, for appellee Black Hills Nebraska Gas, L.L.C.

Douglas J. Peterson, Attorney General, and L. Jay Bartel, for appellee Nebraska Public Service Commission.

Heavican, C.J., Miller-Lerman, Cassel, Stacy, Funke, and Freudenberg, JJ., and Dougherty, District Judge.

Miller-Lerman, J.
## NATURE OF CASE
Metropolitan Utilities District (MUD) appeals the order of the Public Service Commission (PSC) which approved the application of Black Hills Nebraska Gas, LLC, doing business as Black Hills Energy (Black Hills), seeking an enlargement or extension of its natural gas mains in Sarpy County, Nebraska. MUD generally argues that the application was contrary to a 2010 order which it asserts conclusively established that it was in the public interest for MUD to provide natural gas service to the area that was the subject of Black Hills' application. We affirm the PSC's order.

- 815 -

Nebraska Supreme Court Advance Sheets
311 Nebraska Reports
IN RE APP. NO. P-12.32 OF BLACK HILLS NEB. GAS
Cite as 311 Neb. 813

STATEMENT OF FACTS

*Black Hills' Application.*

On February 23, 2021, Black Hills filed an application with the PSC pursuant to Neb. Rev. Stat. § 66-1863 (Reissue 2018) in which it sought a determination that Black Hills' proposed extension of its natural gas mains to provide service to a site in Sarpy County was in the public interest. The application was designated by the PSC as "Application No. P-12.32." Black Hills asserted that it would be providing service to Omaha Public Power District (OPPD) at a site in the area of 168th Street and Fairview Road in Sarpy County and that OPPD planned to build new generation facilities at the site. The approval of Application No. P-12.32 is the subject of this appeal.

Black Hills asserted in the application that the site at issue was within the extraterritorial zoning jurisdiction of Papillion, Nebraska, and that Black Hills served Papillion and its extraterritorial jurisdiction under a current and valid natural gas franchise. Black Hills noted that there had been litigation between Papillion and Springfield, Nebraska, and that following such litigation, the two cites had agreed that the site at which OPPD planned to build its facilities would be within the boundaries of Papillion and not within Springfield. Black Hills asserted that because the site was within Papillion's extraterritorial jurisdiction, under Neb. Rev. Stat. § 66-1861(2) (Reissue 2018), there was a rebuttable presumption that it was in the public interest for Black Hills to provide service to the area. Black Hills also stated that MUD did not possess a current and valid franchise to serve areas within Papillion and that pursuant to Neb. Rev. Stat. § 66-1858 (Reissue 2018), MUD could not solicit a franchise from Papillion.

Black Hills asserted in Application No. P-12.32 that the facilities to be built by OPPD would "support growth in the region while ensuring high reliability of electric generation" and that the facilities would require a high volume of natural gas which would require installation of a new main.

- 816 -

Nebraska Supreme Court Advance Sheets
311 Nebraska Reports
IN RE APP. NO. P-12.32 OF BLACK HILLS NEB. GAS
Cite as 311 Neb. 813

Black Hills stated its preferred route for a new main would be almost entirely within the extraterritorial jurisdiction of Papillion and that the small portion that was not located within such jurisdiction was not presently located within the zoning jurisdiction of any community. Black Hills provided a map depicting known existing infrastructure in the area of OPPD's proposed site, and it stated that it was not aware of any MUD mains within a quarter mile of the proposed service area.

Black Hills finally asserted that extension of its gas distribution system into the site at issue would "contribute to the orderly development of natural gas utility infrastructure," and it noted that as Papillion expanded into its extraterritorial zoning jurisdiction, Black Hills would be the service provider to customers in those areas. Black Hills therefore requested an order from the PSC determining that the proposed extension by Black Hills was in the public interest.

*MUD's Protest.*

On March 3, 2021, MUD filed a protest and motion to dismiss Black Hills' Application No. P-12.32. MUD generally asserted that the site of Black Hills' extension was within MUD's service area as established by a 2010 order of the PSC and that the proposed extension by Black Hills would be duplicative of MUD's planned extension into the area. MUD asserted that the 2010 order established a conclusive presumption that MUD's extension into the area was in the public interest and that presumption could not be overcome by additional evidence or argument. MUD therefore requested that the PSC "summarily dismiss and deny Black Hills's [a]pplication, as a matter of law."

MUD asserted that in 2010, Black Hills and MUD had filed a joint application with the PSC, setting forth their plans to extend and enlarge their respective service areas. MUD further asserted that no objections were filed to the joint application in 2010 and that therefore, pursuant to § 68-1863(3), the application was "conclusively presumed to be in the public

- 817 -

Nebraska Supreme Court Advance Sheets
311 Nebraska Reports
IN RE APP. NO. P-12.32 OF BLACK HILLS NEB. GAS
Cite as 311 Neb. 813

interest" and the two utilities were therefore allowed to proceed with their plans without further action by the PSC.

The joint application of Black Hills and MUD, upon which MUD relies, was filed with the PSC on April 19, 2010, and was designated by the PSC as "Application No. P-0014." In the application, Black Hills and MUD provided a map showing areas within Sarpy County into which each intended to extend or enlarge its respective service area. Black Hills and MUD stated in the application that they stipulated and agreed that such extensions or enlargements satisfied relevant statutory requirements. They further asserted that they had discussed the matter with representatives of Sarpy County and of cities within the county, including Papillion and Springfield, and that the application had received the support of those governmental entities. They also attached to the application an exhibit setting forth applicable conditions and providing that, except for certain stated exceptions, neither Black Hills nor MUD would maintain gas facilities within the other's service area as shown in the map. One of the exceptions was when "[t]he parties determine by agreement that it is more practical and efficient for one party to provide gas service to a customer or customers within the other party's area of service."

On May 12, 2010, the PSC filed an order regarding Application No. P-0014 in which it stated that it had sent required notices and posted notice of the joint application filed by Black Hills and MUD on April 19 and that such notices stated that protests or formal interventions must be filed on or before May 11. In the May 12 order, the PSC stated that no protests or petitions for intervention had been filed and that therefore, pursuant to § 66-1863(3), "the proposed enlargement or extension is presumed to be in the public interest and Applicants may proceed with the extension or enlargement without further [PSC] action." The PSC therefore ordered that the docket in Application No. P-0014 be closed without further action.

- 818 -

Nebraska Supreme Court Advance Sheets
311 Nebraska Reports
IN RE APP. NO. P-12.32 OF BLACK HILLS NEB. GAS
Cite as 311 Neb. 813

In its protest to Application No. P-12.32, MUD asserted that the proposed OPPD site at issue in Black Hills' current application was within MUD's service area established by Application No. P-0014 in 2010 and that MUD was planning to extend service to the site. MUD asserted that in Application No. P-0014, Black Hills had agreed that MUD's extension of service to the area was in the public interest and that the PSC's order in Application No. P-0014 recognized the conclusive presumption that MUD's extension of service to the area was in the public interest. MUD further asserted that Black Hills' plan to extend service to the site would be duplicative of MUD's planned extension and that therefore, Black Hills' extension would not be in the public interest.

In sum, MUD denied that Black Hills' extension of service proposed in Application No. P-12.32 was in the public interest or that it would contribute to the orderly development of natural gas utility infrastructure. MUD therefore requested that the PSC summarily dismiss and deny Black Hills' application.

*Hearing Before PSC.*

The PSC held a hearing on Black Hills' Application No. P-12.32 and MUD's objection thereto on June 9, 2021. At the hearing, exhibits offered by Black Hills and by MUD, as well as by the PSC, were entered into the record. Both Black Hills and MUD presented testimony by their respective witnesses in the form variously of prefiled direct testimony, live testimony, and cross-examination.

Among other evidence and testimony, Black Hills presented testimony by Kevin Jarosz, Black Hills' vice president of operations. Jarosz provided general background regarding Black Hills' history, its franchise with Papillion, and Black Hills' plan to extend service to the site of the planned OPPD facility. He generally testified regarding how the proposed extension would improve the financial profile of Black Hills and would benefit its ratepayers.

- 819 -

Nebraska Supreme Court Advance Sheets
311 Nebraska Reports
IN RE APP. NO. P-12.32 OF BLACK HILLS NEB. GAS
Cite as 311 Neb. 813

Jarosz also testified regarding his involvement with Application No. P-0014 in 2010. Jarosz stated, inter alia, that the joint application was filed in an attempt to resolve ongoing service area disputes between Black Hills and MUD. He stated that the parties had determined as a general matter that MUD would serve Springfield and its future growth and that Black Hills would serve the rest of Sarpy County. Jarosz testified that in 2010, the parties were attempting to estimate how the cities would grow in the future and that the parties knew at that time there would be occasions in the future where they may need to adjust the service area lines because of changed circumstances. Jarosz also testified that pursuant to the resolution of a dispute between Springfield and Papillion regarding boundary issues, the area at issue in the present application was determined to be in the extraterritorial jurisdiction of Papillion serviced by Black Hills rather than that of Springfield. Jarosz further testified regarding extensions made by both Black Hills and MUD since 2010 that were made following agreement between the two utilities.

MUD presented evidence, including the application filed and the order entered in 2010 regarding Application No. P-0014. MUD highlighted portions of the map included in that application which indicated that the site at issue in Black Hills' current application was in MUD's service area at the time of the 2010 application.

MUD also presented testimony by Jim Knight, MUD's vice president of gas operations. Knight testified, inter alia, that the site at issue in the present application was within MUD's service area pursuant to Application No. P-0014. He testified that since 2010, Black Hills and MUD had followed their agreement with rare exception, and that MUD had relied on the service area maps throughout that time. Knight testified that if Black Hills' application was denied, MUD would provide service to the OPPD site, and that it would not need to seek approval to do so because the site was already within its service area pursuant to Application No. P-0014. He testified

- 820 -

Nebraska Supreme Court Advance Sheets
311 Nebraska Reports
IN RE APP. NO. P-12.32 OF BLACK HILLS NEB. GAS
Cite as 311 Neb. 813

that service to the area would be provided by extending a pipeline through territory that was not currently in Black Hills' service area and that it would not be duplicative infrastructure. Knight also testified that if MUD were to provide service at the site, it would be of financial benefit to MUD and its ratepayers.

*PSC Order on Application No. P-12.32.*

After the hearing, on June 29, 2021, the PSC filed an order in which it approved Black Hills' Application No. P-12.32. At the beginning of its analysis, the PSC stated that because the site at issue was within Papillion's extraterritorial jurisdiction and because Black Hills held a franchise with Papillion, under § 66-1861(2), there was a rebuttable presumption that it was in the public interest for Black Hills to provide service to the area. The PSC further stated that because of the rebuttable presumption, MUD had the burden of proof to show that Black Hills' application was not in the public interest.

Reviewing the evidence presented at the hearing, the PSC stated that Black Hills had presented evidence to support each of the five statutory factors listed in Neb. Rev. Stat. § 66-1860 (Reissue 2018) to show that its proposal was in the public interest. In contrast, the PSC stated that MUD had presented "minimal evidence" to dispute that the factors were met. Instead, the PSC stated, MUD's argument was narrowly focused on the 2010 order in Application No. P-0014 and MUD's contention that any consideration of the public interest in the current application was foreclosed by the 2010 order and the conclusive presumption under § 66-1863(3). The PSC rejected MUD's argument and stated that although there was a conclusive presumption as to Application No. P-0014, the presumption did not apply to Application No. P-12.32 which was a separate and distinct application. The PSC stated that Application No. P-0014 was closed on May 12, 2010, and that Application No. P-12.32 was a new application for which new evidence could be adduced.

- 821 -

NEBRASKA SUPREME COURT ADVANCE SHEETS
311 NEBRASKA REPORTS
IN RE APP. NO. P-12.32 OF BLACK HILLS NEB. GAS
Cite as 311 Neb. 813

The PSC further rejected MUD's argument that the PSC's approval of Application No. P-12.32 would amount to a revocation of its order in Application No. P-0014. The PSC stated that the action requested by Black Hills was not to revoke the previous order, but instead was to expand or enlarge its service area. The PSC stated it was required to consider the present application based on "current public interest needs" and that it was not "bound to inflexible limits of past practice." The PSC stated it would be a "curious state of affairs" if it "could never revise any of its previous findings to better serve the current public interest." The PSC stated that its determination of the current public interest with regard to Application No. P-12.32 would not revoke its order on Application No. P-0014 and that the conclusions regarding "what was in the public interest in 2010 remain untouched." The PSC stated that its task with regard to the current application was to "decide what is in the public interest when Black Hills and MUD are unable to reach an agreement as to their respective service territories."

The PSC then reviewed the evidence submitted in this matter, and it found that MUD had not met its burden of proof to overcome the rebuttable presumption in favor of Black Hills. The PSC stated that Black Hills had presented evidence on each of the factors under § 66-1860, and it found that "none of the factors set out [therein] weigh against Black Hills." The PSC noted MUD's argument that granting the application could disrupt the orderly development of natural gas infrastructure as set forth in the maps in Application No. P-0014. The PSC found, however, that the maps filed in 2010 were no longer accurate because of significant changes that had been made without notice to the PSC. The PSC also stated that it was "unclear to what extent the parties themselves relied on these maps in the past eleven years." The PSC stated that ruling on the current application based on "inaccurate, outdated maps" would subvert its responsibility to determine the current public interest and would not contribute to

- 822 -

Nebraska Supreme Court Advance Sheets
311 Nebraska Reports
IN RE APP. NO. P-12.32 OF BLACK HILLS NEB. GAS
Cite as 311 Neb. 813

the orderly development of the natural gas infrastructure in Sarpy County.

One commissioner dissented and generally reasoned that the order in Application No. P-0014 was controlling and should be respected in the interest of finality. The commissioner noted that since 2010, both Black Hills and MUD had made extensions and enlargements based on the conclusive presumption that such actions were in the public interest based on the 2010 order. The commissioner reasoned that because the order in Application No. P-0014 was final, the PSC should not have engaged in a new analysis of public interest and no rebuttable presumption in favor of Black Hills applied. The commissioner further reasoned that even if the PSC could revoke the 2010 order, it should not do so because MUD was willing and able to provide service to the area at issue, and that therefore, it was not in the public interest to allow Black Hills to provide service to the area. However, the majority of commissioners concluded that the application was in the public interest, and the PSC therefore approved Application No. P-12.32.

MUD appeals the PSC's order approving Black Hills' application.

ASSIGNMENTS OF ERROR

MUD generally claims that the PSC erred when it approved Black Hills' Application No. P-12.32. MUD specifically claims, restated and renumbered, that the PSC erred when it (1) found it had authority to determine what was in the public interest in this case; (2) generally disregarded its May 12, 2010, order on Application No. P-0014 and in particular disregarded (a) the conclusive presumption under § 66-1863(3) that Application No. P-0014 and the service areas set forth therein were in the public interest, (b) provisions of Application No. P-0014 describing what was to happen in the event Black Hills and MUD could not reach agreement on service areas, and (c) the extent Black Hills and MUD had relied on the maps set forth in the approved Application No. P-0014; and (3) found

- 823 -

Nebraska Supreme Court Advance Sheets
311 Nebraska Reports
IN RE APP. NO. P-12.32 OF BLACK HILLS NEB. GAS
Cite as 311 Neb. 813

that MUD did not overcome the rebuttable presumption under
§ 66-1861(2) that Black Hills' Application No. P-12.32 was in
the public interest.

STANDARDS OF REVIEW

[1-3] Under Neb. Rev. Stat. § 75-136(2) (Reissue 2018),
an appellate court reviews an order of the PSC de novo on
the record. In a review de novo on the record, an appellate
court reappraises the evidence as presented by the record and
reaches its own independent conclusions concerning the mat-
ters at issue. *In re Application No. OP-0003*, 303 Neb. 872,
932 N.W.2d 653 (2019). When an appellate court makes a de
novo review, it does not mean that the court ignores the find-
ings of fact made by the agency and the fact that the agency
saw and heard the witnesses who appeared at its hearing. *Id*.
Where the evidence is in conflict, an appellate court will con-
sider and may give weight to the fact that the agency hearing
examiner observed the witnesses and accepted one version of
the facts rather than another. *Id*.

[4] The meaning and interpretation of statutes and regula-
tions are questions of law for which an appellate court has an
obligation to reach an independent conclusion irrespective of
the decision made by the court below. *Id*.

ANALYSIS

MUD generally claims that the PSC erred when it approved
Black Hills' Application No. P-12.32, and it sets forth vari-
ous respects in which it asserts the PSC erred in reaching its
decision to approve the application. MUD's claims of specific
error focus on the PSC's May 12, 2010, order on Application
No. P-0014 and the effect of that prior order on the current
proceedings. MUD asserts, inter alia, that because of the
prior order, the PSC did not have authority in this case to
determine whether Black Hills' current application was in the
public interest. We therefore begin by reviewing the PSC's
statutory authority with respect to the current proceedings and

- 824 -

Nebraska Supreme Court Advance Sheets
311 Nebraska Reports
IN RE APP. NO. P-12.32 OF BLACK HILLS NEB. GAS
Cite as 311 Neb. 813

then address MUD's specific arguments regarding the effect of the order in Application No. P-0014 and the other evidence submitted with respect to Application No. P-12.32

*PSC Had Statutory Authority to Determine*
*Whether Black Hills' Application*
*Was in the Public Interest.*

The proceedings in this case are generally governed by relevant provisions of the State Natural Gas Regulation Act, Neb. Rev. Stat. §§ 68-1801 through 68-1868 (Reissue 2018), specifically §§ 68-1858 through 68-1864, regarding enlargement or extension of service areas of metropolitan utilities districts and of jurisdictional utilities that operate in the same county. In the present case, it appears undisputed that MUD is a metropolitan utilities district and Black Hills is a jurisdictional utility and that both operate in Sarpy County. Also, it appears undisputed that Black Hills has a natural gas franchise with Papillion.

Of particular relevance in this case are the following statutes: § 68-1863, which sets forth when a proposed enlargement or extension of a service area is required to be submitted to the PSC for review and which provides that, under certain circumstances, a proposed enlargement or extension will be conclusively presumed to be in the public interest; § 6-1861, which provides for a rebuttable presumption that certain enlargements or extensions are in the public interest; and § 66-1860, which sets forth factors for the PSC to consider when determining whether an enlargement or extension is in the public interest. Section 66-1863 provides in relevant part:

(1) Except as provided in subsections (2) and (3) of this section, no jurisdictional utility or metropolitan utilities district proposing to extend or enlarge its natural gas service area or extend or enlarge its natural gas mains or natural gas services after July 14, 2006, shall undertake or pursue such extension or enlargement until the proposal has been submitted to the [PSC] for its

- 825 -

Nebraska Supreme Court Advance Sheets
311 Nebraska Reports
IN RE APP. NO. P-12.32 OF BLACK HILLS NEB. GAS
Cite as 311 Neb. 813

determination that the proposed extension or enlargement is in the public interest. . . . In making a determination whether a proposed extension or enlargement is in the public interest, the [PSC] shall consider the factors set forth in sections 66-1860 and 66-1861. . . .

. . . .

(3) If no person or entity has filed with the [PSC] a protest alleging that the proposed extension or enlargement is not in the public interest within fifteen business days after the date upon which the application was made public, the enlargement or extension shall be conclusively presumed to be in the public interest and the jurisdictional utility or metropolitan utilities district may proceed with the extension or enlargement without further [PSC] action.

Section 66-1861 provides in relevant part:

In determining whether an enlargement or extension of a natural gas service area, natural gas mains, or natural gas services is in the public interest pursuant to section 66-1860, the following shall constitute rebuttable presumptions:

. . . .

(2) Any enlargement or extension by a jurisdictional utility within a city other than a city of the metropolitan class in which it serves natural gas on a franchise basis or its extraterritorial zoning jurisdiction is in the public interest[.]

Section 66-1860 provides in relevant part:

No jurisdictional utility or metropolitan utilities district may extend or enlarge its natural gas service area or extend or enlarge its natural gas mains or natural gas services unless it is in the public interest to do so. In determining whether or not an extension or enlargement is in the public interest, the district or the utility shall consider the following:

- 826 -

NEBRASKA SUPREME COURT ADVANCE SHEETS
311 NEBRASKA REPORTS
IN RE APP. NO. P-12.32 OF BLACK HILLS NEB. GAS
Cite as 311 Neb. 813

(1) The economic feasibility of the extension or enlargement;

(2) The impact the enlargement will have on the existing and future natural gas ratepayers of the metropolitan utilities district or the jurisdictional utility;

(3) Whether the extension or enlargement contributes to the orderly development of natural gas utility infrastructure;

(4) Whether the extension or enlargement will result in duplicative or redundant natural gas utility infrastructure; and

(5) Whether the extension or enlargement is applied in a nondiscriminatory manner.

Applying these statutes, the proceedings in this case were initiated because, in the ordinary course, Black Hills was required under § 66-1863(1) to submit to the PSC its proposal for extension or enlargement of its service area so that the PSC could determine whether the proposed extension or enlargement was in the public interest. Because MUD protested the application, Black Hills could not rely on § 66-1863(3) and "proceed with the extension or enlargement without further commission action" on the basis that its application was "conclusively presumed to be in the public interest." Instead, the PSC was required to determine whether the proposed extension or enlargement was in the public interest. But under § 66-1861(2), there was a rebuttable presumption that the enlargement or extension proposed by Black Hills was in the public interest because Black Hills was a jurisdictional utility which served Papillion on a franchise basis and the proposed service area was within Papillion's extraterritorial zoning jurisdiction.

Therefore, pursuant to these statutes, the PSC had authority to determine whether Application No. P-12.32 was in the public interest. We address below MUD's argument that the PSC's order on Application No. P-0014 precluded the PSC from exercising that authority with respect to Application No. P-12.32.

- 827 -

Nebraska Supreme Court Advance Sheets
311 Nebraska Reports
IN RE APP. NO. P-12.32 OF BLACK HILLS NEB. GAS
Cite as 311 Neb. 813

*PSC Order in Application No. P-0014 Did*
*Not Preclude PSC From Determining*
*Public Interest With Respect to*
*Application No. P-12.32.*

MUD's protest and its arguments on appeal focus mainly on the relevance of the PSC's order on Application No. P-0014 in 2010. Because no protest was filed against that application, the PSC's order stated that it was "'conclusively presumed'" under § 66-1863(3) that the application was in the public interest and that no further action was required of the PSC. MUD claims that the entry of the order in Application No. P-0014 and the conclusive presumption under § 66-1863(3) preclude the PSC from determining whether the current application by Black Hills in Application No. P-12.32 is in the public interest. MUD further argues that even if the conclusive presumption does not preclude the PSC's consideration of public interest with respect to the current application, the PSC disregarded the terms of Application No. P-0014 and the course of dealings between Black Hills and MUD since the entry of the PSC's order in 2010. We reject these arguments.

First, MUD argues that the operation of the conclusive presumption under § 66-1863(3) is such that the presumption applies to a subsequent application that is at odds with the earlier application and that the conclusive presumption cannot be overcome with evidence of current conditions at the time of the subsequent application. MUD therefore asserts that because in Application No. P-12.32 Black Hills proposes an extension of its service area into an area that was previously assigned to MUD in Application No. P-0014, the conclusive presumption precludes Black Hills from showing that its current application is in the public interest.

In this regard, MUD relies on, inter alia, *Nebraska P. P. Dist. v. Huebner*, 202 Neb. 587, 276 N.W.2d 228 (1979), in which this court determined that once an order entered by the PSC approving an application became final, it could not thereafter be revoked. This court reasoned in that case that

- 828 -

Nebraska Supreme Court Advance Sheets
311 Nebraska Reports
IN RE APP. NO. P-12.32 OF BLACK HILLS NEB. GAS
Cite as 311 Neb. 813

"[t]here must be some finality to judgments and persons must be able to rely at some point in time upon the action of an administrative body." *Id.* at 594, 276 N.W.2d at 232. MUD argues that the order on Application No. P-0014 conclusively determined that it was in the public interest for the site at issue in this case to be in MUD's service area and that the PSC effectively revoked that order when it determined that Black Hills' application to extend its service area to the site was in the public interest.

In response, Black Hills and the PSC cite authority in other contexts which indicate that an agency's determination on a specific application does not foreclose the agency from determining issues in later applications. In *First Nat. Bank of Bellevue v. Southroads Bank*, 189 Neb. 748, 753, 205 N.W.2d 346, 349 (1973), this court held that "an order of the Department of Banking denying an application for a bank charter does not amount to an adjudication for the future and is not res judicata as to another application of the same nature subsequently filed." This court reasoned in *First Nat. Bank of Bellevue v. Southroads Bank* that the prior determination did not "prevent[] further inquiry into the issue," particularly "where there has been a substantial or material change in the circumstances or conditions intervening between the two decisions." 189 Neb. at 751, 205 N.W.2d at 348. The decision in *First Nat. Bank of Bellevue v. Southroads Bank* relied in part on *In re Application of Union P. R. R. Co.*, 149 Neb. 575, 578, 31 N.W.2d 552, 554 (1948), in which this court stated:

"The ruling of the railway commission or of this court on the question of discontinuance of an agency at any given time does not amount to an adjudication for the future. It is only a judgment on the condition presented by the application and relates only to the time and conditions presented."

(Quoting *Thomson v. Nebraska State Railway Commission*, 142 Neb. 477, 6 N.W.2d 607 (1942).) This court in *First Nat. Bank of Bellevue v. Southroads Bank* described *In re*

- 829 -

NEBRASKA SUPREME COURT ADVANCE SHEETS
311 NEBRASKA REPORTS
IN RE APP. NO. P-12.32 OF BLACK HILLS NEB. GAS
Cite as 311 Neb. 813

*Application of Union P. R. R. Co.* as "demonstrat[ing] the time frame reference of orders involving issues of public convenience and necessity." 189 Neb. at 752, 205 N.W.2d at 348. This court noted that both the Department of Banking and the Nebraska State Railway Commission were authorized by statute to act upon applications made to the agency "based upon a determination of public convenience and necessity." *Id*.

[5] Under the statutes set forth earlier in our opinion, the PSC is charged to act upon applications made by utilities and to make determinations of the public interest with respect to such applications. Similar to the statutes governing other agencies, the statutes governing the PSC inherently include a timeframe for determinations of the public interest and require the PSC to determine the public interest at the time of a specific application. The determination of the public interest with regard to a specific application is based on the conditions presented by the application and relates directly to the time and conditions presented, and it does not amount to an adjudication for the future. Therefore, the conclusive presumption under § 66-1863(3) is conclusive as to the determination of the public interest based on the time and conditions presented by the specific application, and it does not constitute a permanent determination or a conclusive presumption as to an application that may be presented to the PSC under different conditions in the future.

In this case, the conclusive presumption was limited to the determination that Application No. P-0014 was in the public interest at the time that the application was filed in 2010. The order gave Black Hills and MUD authority to extend service to the referenced areas at that time. But it did not foreclose consideration of what would be in the public interest at any future date. In our view, MUD attributes greater strength to the "conclusively presumed" language in § 66-1863(3) than is warranted by the statutory language. Compare, *Salem Grain Co. v. City of Falls City*, 302 Neb. 548, 924 N.W.2d 678 (2019) (describing weight to be given to "conclusively

- 830 -

Nebraska Supreme Court Advance Sheets
311 Nebraska Reports
IN RE APP. NO. P-12.32 OF BLACK HILLS NEB. GAS
Cite as 311 Neb. 813

deemed" in the public interest under Neb. Rev. Stat. § 18-2129 (Reissue 2012)). To conclude that the 2010 consensus of Black Hills and MUD embodied in the order in Application No. P-0014 and the conclusive presumption applied under § 66-1863(3) prevents the PSC from considering the public interest in the context of the current application would render meaningless the provisions of § 66-1863(1) and the role of the PSC authorizing and requiring the PSC to determine the public interest with regard to applications presented to it. See *In re Guardianship of Eliza W.*, 304 Neb. 995, 938 N.W.2d 307 (2020) (courts strive, if possible, to give effect to all parts of a statute such that no sentence, clause, or word is rendered meaningless).

MUD also argues that even if the conclusive presumption under § 66-1863(3) with regard to Application No. P-0014 did not preclude any consideration of the public interest in the present case, the PSC disregarded terms of Application No. P-0014 that set forth how future disagreements between Black Hills and MUD would be resolved. MUD also argues that the PSC mischaracterized the utilities' adherence to the terms of Application No. P-0014 when it stated that it was "unclear to what extent the parties themselves relied on these maps in the past eleven years."

Application No. P-0014 provided for certain exceptions to the service areas set forth therein under specific circumstances, including, inter alia, when Black Hills and MUD "determine by agreement that it is more practical and efficient for one party to provide gas service to a customer or customers within the other party's area of service." MUD argues that this provision means that if the utilities do not agree to an adjustment of or exception to the agreed-upon service areas, then the service areas previously agreed upon in the application controlled.

But, as set forth above, the statutes require the PSC to determine public interest when an application and protest are filed. Just as the PSC's order on Application No. P-0014 did not preclude it from considering the current application, the

- 831 -

NEBRASKA SUPREME COURT ADVANCE SHEETS
311 NEBRASKA REPORTS
IN RE APP. NO. P-12.32 OF BLACK HILLS NEB. GAS
Cite as 311 Neb. 813

terms agreed to by the utilities do not override the statutory requirement for the PSC to determine the current public interest with regard to a subsequent application. The utilities may not render those statutes meaningless based on the terms to which they agree.

In the same respect, the utilities' reliance or lack of reliance on the service areas and terms set forth in Application No. P-0014 do not control the statutory requirement for the PSC to determine the public interest with regard to the current application. Therefore, whether the PSC was correct when it said that the extent to which Black Hills and MUD relied on the maps was unclear, such reliance or lack of reliance would not preclude the PSC from exercising its statutory authority with respect to the current application.

In summary, the order in Application No. P-0014 and the conclusive presumption of public interest thereunder did not preclude the PSC from determining public interest with regard to the current application. The terms of Application No. P-0014 and the utilities' intervening reliance on those terms also did not preclude the PSC's determination of the current public interest. Instead, as discussed below, these matters are among factors for the PSC to consider when determining the public interest with respect to the current application.

*PSC Did Not Err When It Determined*
*That MUD Did Not Overcome*
*Rebuttable Presumption.*

MUD finally argues that the PSC erred when it determined that MUD did not overcome the rebuttable presumption in favor of Black Hills' application's being in the public interest. MUD generally focuses its argument on the effect of the 2010 order in Application No. P-0014. As we discussed above, that order did not preclude the PSC from determining whether Black Hills' current application was in the public interest. However, Application No. P-0014 was among the factors for the PSC when considering the current application.

- 832 -

Nebraska Supreme Court Advance Sheets
311 Nebraska Reports
IN RE APP. NO. P-12.32 OF BLACK HILLS NEB. GAS
Cite as 311 Neb. 813

Considering all the evidence before the PSC, we conclude that the evidence supported the PSC's determination that MUD did not overcome the rebuttal presumption under § 66-1861(2) and that Application No. P-12.32 should be approved as in the public interest.

Because Black Hills was a jurisdictional utility with a franchise to serve Papillion and because the proposed OPPD site was within the extraterritorial jurisdiction of Papillion, under § 66-1861(2) there was a rebuttable presumption that Black Hills' extension of its service area to the site was in the public interest. The PSC therefore needed to consider the evidence presented to determine whether that rebuttable presumption was overcome by MUD. Although the 2010 order in Application No. P-0014 did not preclude the PSC's consideration of the public interest in this case, the terms and effect of Application No. P-0014 were properly among the factors for the PSC to consider in determining whether MUD overcame the rebuttable presumption.

We acknowledge that the service areas set forth in the 2010 application were a relevant consideration, but the PSC's determination of the public interest was properly focused on conditions at the time of Application No. P-12.32. In addition to what had been agreed to between Black Hills and MUD in 2010, it was proper for the PSC to consider what had happened since 2010 and how conditions relevant to the public interest had changed since that time. In particular, OPPD had announced its need for service at 168th Street and Fairview Road in Sarpy County. Further, Papillion and Springfield had resolved their dispute, and pursuant to their agreement, the OPPD site came within the extraterritorial jurisdiction of Papillion, which was serviced by Black Hills.

Conditions existing when Application No. P-12.32 was filed in 2021 supported the determination that the current application was in the public interest. In 2010, Black Hills and MUD had agreed in Application No. P-0014 that the site, which is at issue in the current application, should be part of

- 833 -

Nebraska Supreme Court Advance Sheets
311 Nebraska Reports
IN RE APP. NO. P-12.32 OF BLACK HILLS NEB. GAS
Cite as 311 Neb. 813

MUD's service area. However, as noted above, the evidence in this case indicates that the determination of service areas in Application No. P-0014 was based on expectations of future growth in Sarpy County and that in 2010, Black Hills and MUD expected that the site at issue in this case would be in the area of growth for Springfield. Because MUD served Springfield, the site was included in MUD's service area in Application No. P-0014. However, in the intervening years, Papillion and Springfield resolved ongoing disputes by agreeing that, inter alia, the site at issue in this case would be in the extraterritorial jurisdiction of Papillion, which was serviced by Black Hills. Therefore, the expectation of 2010 was contrary to the reality of 2021 and the public interest shifted to the site's being served by Black Hills, which had a franchise with Papillion.

Furthermore, Black Hills indicated in Application No. P-12.32 that there were no MUD mains within a quarter mile of the proposed OPPD site. The site was within MUD's service area under Application No. P-0014, and based on the conclusive presumption under § 66-1863(3), MUD was permitted at the time in 2010 to "proceed with the extension or enlargement without further [PSC] action." But there was no evidence in the present proceeding to indicate that between 2010 and 2021, MUD had taken demonstrable action to extend service to the site based on the authority of Application No. P-0014. More particularly, after OPPD announced its plan to build facilities on the site, there is no indication that MUD actively took steps to extend service to that site based on the order in Application No. P-0014, nor did it seek specific approval to extend service to the site.

Our review of the record indicates that the PSC did not err when it determined that MUD had not overcome the rebuttable presumption that Application No. P-12.32 was in the public interest. The record instead indicates that the application was shown to be in the public interest and that the PSC did not err when it approved Application No. P-12.32.

- 834 -

Nebraska Supreme Court Advance Sheets
311 Nebraska Reports
IN RE APP. NO. P-12.32 OF BLACK HILLS NEB. GAS
Cite as 311 Neb. 813

## CONCLUSION

We conclude that the PSC had authority to determine the public interest with respect to the current application, Application No. P-12.32, and that the PSC's 2010 order in Application No. P-0014 did not preclude the PSC's consideration of the public interest with respect to the current application. We further conclude that the PSC did not err when it determined that in light of all the evidence, including evidence related to Application No. P-0014, MUD had not overcome the rebuttable presumption that the proposed extension or enlargement sought by Black Hills to extend service to the OPPD site at 168th Street and Fairview Road under Application No. P-12.32 was in the public interest. We therefore affirm the PSC's order approving Application No. P-12.32.

Affirmed.

Papik, J., not participating.